## NORTHERN INDIANA RAILWAY COMPANY ET AL.
## v. LINCOLN NATIONAL BANK.

[No. 6,812.   Filed June 29, 1910.   Rehearing denied December 15, 1910.   Transfer denied February 3, 1911.]

1. JUDGMENT.— *Collateral Attack.*— *Notes.*— *Garnishment.*—In an action on a note, wherein the defense was that the maker of the note was garnished by the payee's creditor and that a judgment in garnishment was rendered and paid, a denial of the validity of such judgment constitutes a collateral attack thereon, and must fail unless the judgment is void. p. 102.

2. ATTACHMENT AND GARNISHMENT.—*Commencement of Action.*— *Process.*—*Statutes.*—Under §966 Burns 1908, Acts 1897 p. 233, providing that "if at the time such action [attachment and garnishment] is commenced or at any time afterwards, whether a writ of attachment has been issued or not, the plaintiff" may file an affidavit and secure a writ commanding any person to answer as garnishee, an action is "commenced" at the time of filing the complaint, although §317 Burns 1908, §314 R. S. 1881, provides

Northern Ind. R. Co. *v.* Lincoln Nat. Bank—47 Ind. App. 98.

that an action shall be deemed commenced against a nonresident "from the time of the first publication" of notice, such latter statute referring primarily to the limitation of actions, since a contrary holding would evidently frustrate the primary purpose of the proceeding for attachment and garnishment.    pp. 102, 105, 107, 111.

3. ATTACHMENT AND GARNISHMENT.—*Writs.—Time of Issuance.*— Writs of attachment may issue at the time of filing the complaint, or afterwards.    p. 104.

4. ATTACHMENT AND GARNISHMENT.—*Judgment.—How Rendered.*— Prior to 1897 (Acts 1897 p. 233) no judgment could be recovered against a garnishee unless a writ of attachment had been issued and a judgment had been rendered against the attachment defendant.    p. 104.

5. ATTACHMENT AND GARNISHMENT.—*Procedure.*—The procedure in attachment is essentially the same as it is in garnishment, the one being applicable to tangible, and the other to intangible property.    p. 105.

6. ATTACHMENT AND GARNISHMENT.— *Statutes.— Amendments.*— The act of 1897 (Acts 1897 p. 233) amending the attachment and garnishment law must be construed with such law, and has the same effect, as to matters arising subsequent to its enactment, as if it had been originally enacted as a part of the original law. p. 105.

7. ATTACHMENT AND GARNISHMENT.— *Statutes.— Remedial.— Construction.*—The garnishment statute of 1897 (Acts 1897 p. 233) being remedial, should be liberally construed to carry out the purpose of its enactment.    p. 107.

8. STATUTES.—*Purpose.—Terms.—Construction.*—Where the purpose of a statute is clear, a construction will be given thereto which will carry out such purpose, though such construction be contrary to the strict letter of the statute.    p. 107.

9. ACTION.—*Commencement of.—Jurisdiction.—Parties.*—The court has jurisdiction over the plaintiff as soon as his complaint is filed.    p. 109.

10. ATTACHMENT AND GARNISHMENT.—*Jurisdiction.*—The filing of plaintiff's complaint and affidavit of defendant's nonresidence, in a garnishment case, together with the publication of a proper notice, there being debts due to the defendant from persons within the county, gives to the court jurisdiction in such case. p. 110.

11. ATTACHMENT AND GARNISHMENT.—*Jurisdiction.*—Where plaintiff filed his complaint, caused summons to be issued for defendant, which was returned "Not found," afterwards filing his affidavit of defendant debtor's nonresidence, together with affidavits in attachment and garnishment, and a writ of attachment was

issued and returned "No property found," and a writ of garnishment was issued and a nonresident notice seasonably published, the court has jurisdiction to render a judgment in garnishment. p. 110.

12. JUDGMENT.—*Form of.* — *Payment.* — *Collateral Attack.* — The form of a judgment that is within the issues, where jurisdiction of the parties and subject-matter exists, cannot be questioned in a collateral attack; and a garnishee's payment of such judgment will be a complete defense to an action on the debt, where the question arises on a collateral attack. p. 111.

From St. Joseph Circuit Court; W. A. Funk, Judge.

Action by the Lincoln National Bank of Pittsburgh, Pennsylvania, against the Northern Indiana Railway Company and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

W. A. McInerny, H. R. Wair, Brick & Graham and W. L. Taylor, for appellants.

Anderson, Parker & Crabill, for appellee.

HADLEY, J.—This was an action instituted in the St. Joseph Circuit Court by the Lincoln National Bank of Pittsburg, Pennsylvania, as assignee of a nonnegotiable note executed in favor of DeWitt Dilworth, also a resident of Pittsburg, Pennsylvania, against the maker of said note, the Northern Indiana Railway Company, and the sureties thereon, Arthur Kennedy and Francis J. Torrence, which note was executed on November 15, 1904, due fifteen months after date. Appellants answered by general denial, and specially in two paragraphs; the second and third, which are substantially the same, allege in substance that on August 9, 1905, in cause No. 10,529, in the circuit court of said county, Frank H. Dunnahoo filed his complaint against said DeWitt Dilworth, on account for $5,000, and at the same time and as auxiliary thereto filed his affidavit and undertaking in attachment, and on the same day caused a summons to be issued against said Dilworth, appellant railway company, the Citizens National Bank of South Bend and the Allegheny National Bank of Pittsburg, Pennsylvania,

which summons was returned on the same day by the sheriff of said county, which return showed that it had been served on appellant railway company and on the Citizens National Bank, but that neither Dilworth nor the Allegheny National Bank, nor any representative thereof, could be found in said bailiwick. Whereupon, on said day, said Dunnahoo filed an affidavit and bond in attachment, and a writ of attachment issued thereon against the property of Dilworth, which writ was returned "No property found;" that thereafter and on the same day an affidavit of nonresidence of said Dilworth and for publication of notice to him was made and filed; that thereafter and on the same day said Dunnahoo filed his affidavit and bond in garnishment against appellant Indiana Northern Railway Company, the Citizens National Bank of South Bend and the Allegheny National Bank of Pittsburg, Pennsylvania. A garnishment summons was duly served on appellant railway company and said Citizens National Bank, said service being had on August 9. Notice by publication was given to the Allegheny National Bank, the first publication of said nonresident notice being had on August 11, 1904. On December 19, 1905, appellant railway company appeared in said cause and filed its disclosure, admitting the indebtedness on said note to said Dilworth. On February 9, 1906, said cause was submitted to trial and a judgment had in favor of Dunnahoo against Dilworth, and also against the garnishee Indiana Northern Railway Company, and said garnishee was ordered to pay to the clerk of the court the amount of the judgment and costs found against Dilworth, which it did at the maturity of said note in the amount of $3,873.42, and said garnishee was further ordered to pay what remained of said indebtedness after paying said judgment and costs to said Citizens National Bank for the use of said Dilworth, it having been shown that said note was payable at said bank. It was also shown that the note that was thus liquidated was the same note sued on in this action. A demurrer for want of facts

102    APPELLATE COURT OF INDIANA,

Northern Ind. R. Co. *v.* Lincoln Nat. Bank—47 Ind. App. 98.

was sustained to each of said paragraphs. Appellants answered in another paragraph by a plea of payment. To the plea of payment appellee replied by denial. Upon issues thus joined the cause was tried and judgment rendered in favor of appellee. The sustaining of the demurrers to the second and third paragraphs of amended answer is presented for our consideration. The question thus presented involves the determination of the validity of the judgment rendered in the garnishment proceeding, it being contended by appellee that since the writ of garnishment was issued prior to the first publication of the nonresident notice it was invalid, and the judgment rendered thereon was void.

The proceeding instituted by appellee is a collateral attack upon the judgment rendered on the garnishment proceeding, and if the defect in the proceeding was a

1. mere irregularity, it nevertheless will withstand a collateral attack.

The determination of the question here involved hinges upon the construction to be given to §966 Burns 1908, Acts 1897 p. 233. This section in part is as follows: "In

2. all personal actions arising upon contract, express or implied, or upon a judgment or decree of any court, *if at the time such action is commenced or at any time afterwards,* whether a writ of attachment has been issued or not, the plaintiff, or any person in his behalf, shall file with the clerk an affidavit that he has good reason to believe, and does believe, that any person   *   *   *   has the control or agency of any property, moneys, credits or effects,   *   *   *   the clerk shall issue a summons notifying such person, association or corporation to appear at the ensuing term of the court and answer as garnishees in the action. The summons shall be directed to the sheriff and served and returned by him in the same manner as a summons is served and returned in other cases." (Our italics.)

Appellee contends that under §317 Burns 1908, §314 R. S. 1881, an action is not commenced against a nonresident until

the first publication of notice. This section is as follows: "A civil action shall be commenced, by filing in the office of the clerk a complaint, and causing a summons to issue thereon; and the action shall be deemed to be commenced from the time of issuing the summons; but as to those against whom publication is made, from the time of the first publication. The summons shall be issued by the clerk, under the seal of the court, and directed to the sheriff, and shall notify the defendant of the action commenced, the parties thereto, and the court where pending."

It is evident that if the definition of commencement of an action, as heretofore given, is applied with strictness to the garnishment statute, the writ in this case was prematurely issued. But appellants contend that this provision, as to when an action shall be deemed commenced, has reference primarily to limitations of actions, and should not be applied with strictness to remedial statutes. Upon examination it will be found that in the revision of the code of 1881, sections thirty-seven to fifty-four inclusive (§§294-308 Burns 1908, §§292-306 R. S. 1881) relate solely to the limitations of time within which actions may be commenced after their accrual. Then follows section fifty-five (§317 Burns 1908, §314 R. S. 1881) providing when an action shall be deemed to be commenced. It is therefore evident that section fifty-five was enacted for the primary purpose of fixing a definite time for the commencement of an action with reference to the statute of limitations; but the section by its terms is not limited to this purpose, and the provisions thereof should therefore be applied to other enactments of the legislature, where the time of the commencement of the action is material, unless the provisions of the subsequent enactment show a contrary intent, or the construction by such application would evidently subvert or frustrate the purposes of the legislative body.

Under the contention of appellee, in this case, Dunnahoo should have filed his complaint in his case against Dilworth,

and, upon a return on the summons and writ of attachment of "Not found," he should have waited until the first publication before issuing the writ of garnishment. This would have necessitated a delay of two days in securing the fund, within which time such fund might have been wholly withdrawn and plaintiff left remediless. In many cases such a course would mean a delay of perhaps a week, a condition wholly at variance with the fundamental purpose of garnishment and attachment proceedings that have their origin in necessity, and whose efficiency depends on celerity of action, their main purpose being to secure a lien upon the property of a failing or fraudulent debtor; and to say that such a debtor must be notified of the service of a writ before a lien can be created is to give him the opportunity of perpetrating the very wrong which the garnishment may be intended to prevent. *Raynolds* v. *Ray* (1888), 12 Colo. 108, 20 Pac. 4.

Prior and up to the time of the amendment of 1897 (Acts 1897 p. 233), writs of garnishment were dependent upon the issuance of writs of attachment, and such writs were

3. authorized to be issued at the time of filing the complaint or afterwards. §947 Burns 1908, §913 R. S. 1881. And this is still true, by the terms of the statute, as to attachment. §947, *supra.*

Prior to the amendment of 1897, *supra,* no judgment could be recovered against the garnishee unless a writ of attachment had been issued and a judgment had been

4. rendered against defendant in the attachment proceedings (*Pomeroy* v. *Beach* [1898], 149 Ind. 511; *Emery* v. *Royal* [1889], 117 Ind. 299) ; and it was to remedy the useless proceedings of the issuance of a writ of attachment and rendering judgment thereon, where there was no tangible property, that said amendment of 1897 was made.

Both writs have gone hand in hand since legislation began on this subject. The grounds for the issuance of one are

the grounds for the issuance of the other. The procedure is identical, except so far as changes are necessary effectually to apply to the different classes of property involved. The amendment of 1897 did not provide an independent proceeding. On the contrary, it became a part of and must be read into and be construed with the original remaining sections providing for attachment and garnishment proceedings. *Pomeroy* v. *Beach, supra.* In that case the Supreme Court, speaking to this point, said: ''The sections, as amended by said act of 1897 [Acts 1897 p. 233, §943 *et seq.* Burns 1897], are to be read into the code of civil procedure in the place of the original sections, and from the date said act took effect are a part of said code of civil procedure, and must be so construed. An amendatory act and the amended statute are to be construed as one. *Walsh* v. *State, ex rel.* [1895], 142 Ind. 357, 362, and cases cited; Sutherland, Stat. Constr. §288. It is clear, therefore, that the act of 1897 does not provide an independent procedure in garnishment, but that the amended sections are to be construed with the sections of the code of civil procedure of 1881 concerning proceedings in attachment and garnishment not amended by said act. When so construed, it is evident that it was not the legislative intent that any one should be authorized to commence proceedings in garnishment, and obtain a summons, without also filing an affidavit in attachment, either at the time, or before he filed his affidavit in garnishment. Now, as before the act of 1897 was passed, an affidavit in attachment must be filed, as well as an affidavit in garnishment, before the garnishee summons can issue.''

The affidavit and bond may be filed and writ of attachment issued when the complaint is filed upon this affidavit and bond. Upon filing an additional affidavit pursuant to the section of the amendatory act of 1897, *supra,* a writ of garnishment may issue whether the

106 APPELLATE COURT OF INDIANA,

Northern Ind. R. Co. *v.* Lincoln Nat. Bank—47 Ind. App. 98.

writ of attachment has issued or not. Construing these acts, that are so inseparably united, together, it seems evident that the legislature never intended to change the time of the issuance of the writ of garnishment, and that the words "at the time the action is commenced" were not intended to be governed by the statutory definition of that term, but rather the common legal understanding of the term as applied to this class of actions and in accord with the time fixed for the issuance of the attachment, viz., the time of the filing of the complaint. The primary purpose of the amendatory act of 1897 was to authorize the issuance of writs of garnishment without the issuance of a writ of attachment. This is the controlling idea of the act, and on this purpose the minds of the framers of the act were focused.

If the contention of appellee is to prevail, we have the peculiar situation of authority to issue a writ of attachment, an ancillary proceeding, at the time of the filing of the complaint, and only authority to issue a writ of garnishment, a writ always heretofore issuable at the same time and in every respect of like character, after issuance of summons as to residents and publication of notice as to nonresidents. Counsel for appellee undertake, in oral argument, to give a reason for this distinction, but, in our opinion, the distinction thus made is not persuasive. The purpose of the writ in each case is the same. One is to secure the creditor against removal or transfer of tangible property; the other is to secure him against removal or transfer of intangible property, and we cannot perceive how it would be possible to remove or transfer tangible property with greater facility than intangible property, or why quick action is not as necessary in the one case as the other.

So, taking into consideration the purposes of the writ, the purpose of the amendatory act, and the expression of the legislature on a similar subject, by provisions that are *in pari materia* with the one we are considering, we are convinced that the use of the term, "at the time such action is

NOVEMBER TERM, 1910.    107

Northern Ind. R. Co. *v.* Lincoln Nat. Bank—47 Ind. App. 98.

commenced," in the amendment of 1897, was an inapt expression of what was intended by the legislative body, and that it was not intended that the term should be construed by the provisions of §317 Burns 1908, §314 R. S. 1881. We feel warranted in taking this position, under the rule that since we are considering a remedial statute, it should

7. be liberally construed in order to effectuate the purpose and remove the mischief for which it was intended. *Fisher* v. *Consequa* (1809), 2 Wash. C. C. 382, Fed. Cas. No. 4,816.

And when the purpose of the legislative body sought to be accomplished is clear, such construction shall be given the statute as will carry out such purpose, even

8. though such construction is contrary to the strict letter thereof. *City of Evansville* v. *Summers* (1886), 108 Ind. 189; *City of Valparaiso* v. *Gardner* (1884), 97 Ind. 1; *Maxwell* v. *Collins* (1856), 8 Ind. 38; *State, ex rel.,* v. *Forkner* (1880), 70 Ind. 241.

We are further constrained to this view by the construction given similar statutes in other states, and by other authorities. In Rood, Attachments §114, the learned

2. author says: "Attachments are usually allowed by the statutes to be issued at the commencement of the action or at any time before judgment. For this purpose the action is commenced as soon as the declaration, or complaint, is filed and before the summons has been served or issued."

In the case of *Hagan* v. *Burch* (1859), 8 Iowa 309, the petition, affidavit for attachment and judgment bond were filed November 29, 1857, and the writ of attachment issued on the same date. The summons was issued on the day following. The defendant moved to quash the writ, on the ground that it was issued before the commencement of the action, and the motion was overruled. The statute in that state provided that the attachment might issue at the commencement or during the progress of the suit, and another

108    APPELLATE COURT OF INDIANA,

Northern Ind. R. Co. *v.* Lincoln Nat. Bank—47 Ind. App. 98.

section of their statute provided substantially as ours, that the delivery of the notice to the sheriff, with the intent that it be served immediately, shall be deemed the commencement of an action. In sustaining the action of the lower court in overruling the motion to quash the writ, the supreme court said: ''But it will be noticed that this latter provision, is contained in the chapter (99) which relates to the limitation of actions. The intention here is, that when the precise time of the commencement of an action becomes material, the fact referred to in section 1663, is made to define that time. The filing the petition, or the issuing the notice, might have been made the point, but these might take place without an intent to prosecute the action immediately, so that delivering the notice with intent to be served, is made the time to which to reckon, especially in the question of limitation. The action may, however, be fairly considered as begun, for other purposes, and, perhaps, to all common intents and purposes, when the petition is filed. At least, it seems consistent and reasonable to consider it so far commenced, as that part of its own process—such as a writ of attachment—may issue even before the notice. There is no harm, no wrong, effected by this.''

In the case of *Dunlap* v. *McFarland* (1881), 25 Kan. 488, where the statutes under consideration were substantially the same as the statutes in our State, and where the same question was presented as is here presented, the court used this language: ''But it is further claimed by the defendant that the attachment was erroneously issued before any action was commenced, and he refers to sections 190 and 20 of the civil code, in connection with the foregoing facts, to support his claim. Of course, an attachment cannot rightfully be issued before the action (of which it is only an incident) is commenced. But we do not think that the attachment in this case was issued before the action was commenced. The action was commenced when the petition and precipe were filed, and when the summons was issued. Section twenty of

NOVEMBER TERM, 1910. 109

Northern Ind. R. Co. *v.* Lincoln Nat. Bank—47 Ind. App. 98.

the civil code has application only to the statute of limitations; but even that section provides that 'an attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days.' We do not think that this claim of the defendant is tenable." Similar constructions are found in the cases of *Bannister* v. *Carroll* (1890), 43 Kan. 64, 22 Pac. 1012; *Cosh-Murray Co.* v. *Tuttich* (1895), 10 Wash. 449, 38 Pac. 1134; *Coe* v. *Hinkley* (1896), 109 Mich. 608, 67 N. W. 915; *McDonald* v. *Alanson Mfg. Co.* (1895), 107 Mich. 10, 64 N. W. 730; *Schroeder* v. *Merchants, etc., Ins. Co.* (1882), 104 Ill. 71.

Ordinarily, and in the absence of statutory restrictions, the commencement of a suit does not depend upon service of process upon defendant, or jurisdiction over him. In fact, we have found no authority that so holds. But it is apparent that a suit is not commenced until the court has in some manner acquired jurisdiction of something in relation to the controversy. It must therefore be over the person of plaintiff or the subject-matter or both. The court acquires jurisdiction of plaintiff when he applies for its power and assistance to compel defendant to render him his rights under the law. And this aid must be sought according to prescribed form. Our practice requires that he shall file his complaint and have summons issued thereon; and, if personal summons cannot be had, that he file his affidavit of such fact and ask that a notice by publication be given. This is in the nature of an application to the court to send its process to require defendant to appear and defend the action. The court clearly has jurisdiction of plaintiff when he thus invokes its aid. When he thus submits his person to the court, he, by asking its aid, gives the court jurisdiction over the subject-matter in controversy, and con-

fers power to adjudicate his rights thus submitted. In this manner the court becomes possessed of jurisdiction of the person of the plaintiff and of the subject-matter, and, when so possessed, it becomes the duty of the court to commence and carry on the power to bring defendant into court, that the case may be heard and the rights of the parties in the matter thus brought before the court may be judicially and conclusively determined. It therefore follows that when plaintiff submits himself and the subject-matter to the jurisdiction of the court, he has commenced his suit. The cause is then *coram judice*. *Schroeder* v. *Merchants, etc., Ins. Co., supra.* All done in the case subsequently is but a continuation of the action he thus started, until the final end of the suit.

Furthermore, in the garnishment case of Dunnahoo against Dilworth, the only jurisdiction the St. Joseph Circuit Court had to adjudicate the matters in controversy between them (Dilworth being a nonresident), was based upon the fact that certain property of, or debts due, Dilworth, were within the jurisdiction of the court and subject to its orders, and the efficiency of the notice by publication rested upon the fact that certain property of Dilworth had been brought within such jurisdiction and control. *Pennoyer* v. *Neff* (1877), 5 Otto 714, 24 L. Ed. 565; *Bannister* v. *Carroll, supra.*

In the case under consideration, plaintiff filed his complaint, had summons issued thereon and returned "Not found," and filed his affidavit of nonresidence of defendant Dilworth, and also filed affidavits in attachment and garnishment and had a writ of attachment issued and returned "No property found," and a writ of garnishment on appellant, and also a notice for publication on Dilworth, which notice was duly and seasonably published. This, in our opinion, was a sufficient commencement of the action to invoke the jurisdiction of the court and to

validate the judgment in the garnishment proceedings thereafter rendered.

The cases cited by appellee are not in conflict with our holding, as they contain at least one of the following elements not found here, viz.: Either there was no 2. petition filed at the time of the issuance of the writ, or no valid service was ever had upon the defendants, or a statute arbitrarily fixing the time of the issuance of the writ at the time or after issuance of summons was violated. Under our construction of our statute, the time of the issuance of the writ is only limited to "at or after the commencement of the action," and the latter term is to be taken in its ordinary sense without statutory limitation or definition. Furthermore, in almost, if not all the cases cited by appellee, the question arose by way of direct attack upon the writ. In view of these facts, it would be unprofitable to review each case.

It is also urged against the sufficiency of the answer, that it avers that the judgment of the court was that the garnishee should pay out of the money due Dilworth a 12. sufficient amount to satisfy the debt of plaintiff Dunnahoo, and pay the balance remaining on the debt due Dilworth to the Citizens National Bank of South Bend; that the garnishee, the Northern Indiana Railway Company, did pay on said Dunnahoo debt the sum of $3,873.41, and did turn over the remainder to said Citizens National Bank under said order of court, and that this is only a partial defense to the note, since the averment of the payment of the surplus to the Citizens National Bank is no defense. Objection to the form of the judgment should have been urged against the judgment originally entered against the garnishee, the Northern Indiana Railway Company, but the averment of the answer is that the payment was made as ordered by the court. Whether the court had any authority in law to order the garnishee defendant to pay the surplus to the

bank is not before us, and we do not decide this question; but it is a sufficient defense to the garnishee in a collateral attack, to say that he has paid the money under and in accordance with the order of the court in a garnishment proceeding wherein the court had full jurisdiction of the subject-matter and the parties to the cause. In the absence of appearance of the defendant to the action in a garnishment proceeding, the duty devolves upon the garnishee to be assured that the court has jurisdiction over the subject-matter and the parties to the action. Further than that, he is not required to go. Thereafter the judgment of the court is his protection and his obedience is a complete defense. *Schoppenhast* v. *Bollman* (1863), 21 Ind. 280; *Ohio, etc., R. Co.* v. *Alvey* (1873), 43 Ind. 180; *Harmon* v. *Birchard* (1847), 8 Blackf. 418.

In the case of *Schoppenhast* v. *Bollman, supra,* the court, speaking to this point, said: "Where the defendant is not personally before the court, the garnishee is concerned, as to the main action, only in the question of jurisdiction. Where that has attached, his right to inquire into or interfere with such procedure is at an end; for all that he is interested in is, that the attachment proceedings against himself shall protect him in another suit. That they will do so though there be in them errors and irregularities, for which the defendant might obtain their reversal, there can be no doubt."

In the case of *Harmon* v. *Birchard, supra,* substantially the same rule is announced as follows: "A garnishee in attachment is not bound to superintend a defense for the principal debtor, and is not answerable for such defects and irregularities in the proceedings as relate only to the mutual rights of the original parties to the attachment suit, but he should know that the proceedings against himself are valid and such as he is legally compelled to obey; for otherwise, such proceedings being in their nature *ex parte* so far as the attachment debtor is concerned, they are no evidence of

any request either express or implied on the part of the latter.''

The second and third paragraphs of appellants' amended answer show a sufficient defense, and the demurrer to each should have been overruled.

Judgment reversed with instruction to overrule the demurrer to each paragraph of answer.