**In the Matter of the PATERNITY AND MATERNITY OF INFANT R.**

No. 64A03–0908–JV–367.

Court of Appeals of Indiana.

Feb. 17, 2010.

Transfer Denied May 13, 2010.

Steven C. Litz, Monrovia, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary[1]

T.G., V.G., and D.R. appeal the denial of their Agreed Petition to Establish Paternity and Maternity of Baby R., who was given birth by D.R. but is purportedly the biological child of T.G. and V.G. We reverse and remand for further proceedings.

### Issue

A sole issue is presented for review: whether the trial court erroneously denied the petition, which sought to establish V.G., as opposed to D.R., as the legal mother of Baby R.

### Facts and Procedural History

T.G. and V.G., who are husband and wife, purportedly agreed with D.R., who is V.G.'s sister, that their embryo would be implanted into D.R. On December 24, 2008, the parties jointly petitioned the Porter County Juvenile Court to establish the paternity and maternity of the unborn child. During February of 2009, D.R. gave birth to Baby R. At that time, T.G. executed a paternity affidavit to acknowledge his paternity of Baby R.[2]

With T.G.'s paternity of Baby R having been established by affidavit, the juvenile court conducted a hearing on the remaining request for establishment of maternity, at which argument was heard but no evidence was taken. On May 26, 2009, the juvenile court denied the pending petition as follows:

The Court finds that Indiana law does not permit a non birth mother to establish maternity. Indiana law holds the birth mother is the legal maternal mother. The Court finds and recommends that the Agreed Petition to Establish Paternity and Maternity be denied.

(App. 14.) This appeal ensued.

### Discussion and Decision

#### I. Standard of Review

The juvenile court made a determination of law, that is, Indiana law lacks a provision for the establishment of maternity in these circumstances. We review questions of law *de novo* and owe no deference to the trial court's conclusions. *W.C.B. v. State*, 855 N.E.2d 1057, 1059 (Ind.Ct.App.2006), *trans. denied.*

#### II. Analysis

"It is the policy of this state . . . to recognize the importance of family and children in our society . . . acknowledge the responsibility each person owes to the other . . . [and] strengthen family life by assisting parents to fulfill their parental obligations[.]" Ind.Code § 31–10–2–1. Additionally, it is well-settled that it is in the best interests of a child to have his or her biological parentage established. *See In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016 (Ind.1992) (observing "there is a substantial public policy in correctly identifying parents and their offspring. Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons."). *See also* Ind.Code § 31–14–4–1

---

1. We held oral argument in this case on January 28, 2010. We thank counsel for both parties for their able advocacy.

2. Indiana Code § 16–37–2–2.1 provides for execution of a paternity affidavit on a form provided by the State. Subsection (m) provides in relevant part: "if a man has executed a paternity affidavit in accordance with this section, the executed paternity affidavit conclusively establishes the man as the legal father of a child without any further proceedings by a court."

(providing for the initiation of a paternity action).[3]

■ However, no legislation enacted in this State specifically provides procedurally for the establishment of maternity; it is presumed that a woman who gives birth to a child is the child's biological mother. *See* Ind.Code § 31–9–2–10 (defining, in relevant part, a "birth parent" to be "the woman who is legally presumed under Indiana law to be the mother of biological origin ... [.]" *See also Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1059 (Ind.1992) ("Because it is generally not difficult to determine the biological mother of a child, a mother's legal obligations to her child arise when she gives birth.").

Nonetheless, we are confronted with reproductive technologies not contemplated when our Legislature initially sought to provide for the establishment of legal parentage for biological parents. Now, however, reproductive technologies have advanced to provide for gestational surrogacy where an egg from the biological mother is artificially inseminated with the sperm of the father and implanted into a host womb for incubation until birth. The State of Indiana asserts that equitable relief may be afforded in these particular circumstances.

Alternatively, T.G., V.G., and D.R. assert that Indiana's paternity statutes may be construed so as to apply equally to T.G. and V.G., to facilitate the establishment of Baby R.'s biological parentage. While we conclude that the public policy for correctly identifying biological parents is clearly evinced in our paternity statutes, it does not follow that we must embark on a wholesale adoption and application of these statutes in order to provide relief under the narrow set of circumstances we are presented with today. Rather, it is for the Legislature to evaluate and deliberate comprehensive proposals for changes to these statutes. Nevertheless, the public policy embodied therein, together with the unique factual circumstances presented, suggest that equity should provide an avenue for relief in this case.

Specifically, if equity ignores technological realities that the law has yet to recognize, a child born in the circumstances alleged herein would be denied the opportunity afforded to other children of this State, that is, to be legally linked to those with whom he or she shares DNA. Moreover, a woman who has carried a child but is not biologically related to that child would be denied a remedy available to putative, but not biological, fathers, that is, the removal of an incorrect designation on the birth certificate and the avoidance of legal responsibilities for another person's child.

■ We are aware of no reason why the public interest in correctly identifying a child's biological mother should be less compelling than correctly identifying a child's biological father. Indeed, establishing the biological heritage of a child is the

---

**3.** In relevant part, Indiana Code Section 31–14–4–1 provides:

"A paternity action may be filed by the following persons:

(1) The mother or expectant mother,

(2) A man alleging that:

  (A) He is the child's biological father; or

  (B) He is the expectant father of an unborn child.

(3) The mother and a man alleging that he is her child's biological father, filing jointly.

(4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.

(5) A child.

(6) The department or a county office of family and children under section 3 of this chapter.

(7) The prosecuting attorney under section 2 of this chapter."

express public policy of this State. *See* Ind.Code § 31–14–4–1. And thus, "when the purpose of the legislative body sought to be accomplished is clear, such construction shall be given the statute as will carry out such purposes, even though such construction is contrary to the strict letter thereof." *N. Ind. Ry. Co. v. Lincoln Nat. Bank,* 47 Ind.App. 98, 92 N.E. 384, 387 (1910). In these narrow circumstances, we find that the paternity statutes provide a procedural template to challenge the putative relationship between the infant and D.R.

Procedure aside, this presumptive relationship will stand unless V.G. establishes that she is, in fact, the biological mother of Baby R. She must do so by clear and convincing evidence. *Cf. Vanderbilt v. Vanderbilt,* 679 N.E.2d 909, 911 (Ind.Ct. App.1997) (finding that a presumption of paternity of a child born in a marriage may be rebutted by direct, clear, and convincing evidence that the husband was excluded as the child's father based upon blood test results), *trans. denied.* Clearly, this would involve more than simply an affidavit or a stipulation between the affected parties.

We reverse and remand with instructions for the trial court to conduct an evidentiary hearing and, assuming that V.G. is shown by clear and convincing evidence to be the biological mother of Baby R., grant all other relief just and proper under the circumstances.[4]

Reversed and remanded.

BAKER, C.J., and BRADFORD, J., concur.

---

4. Because we have found equitable relief to be appropriate, we need not address contentions with regard to the Equal Privileges and Immunities Clause, Art. I. § 23 of the Indiana Constitution.