# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**STEVEN C. LITZ**
Monrovia, Indiana



**FILED**
Jul 11 2013, 8:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| | ) | |
| IN THE MATTER OF THE PATERNITY | ) | |
| AND MATERNITY OF INFANT T., | ) | No. 67A05-1301-JP-36 |
| | ) | |
| | ) | |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No. 67C01-1211-JP-75

**July 11, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

In this nonadversarial proceeding, M.F. is the biological father of Infant T. Infant T. was born to S.T., who acted as a surrogate for M.F. and an unknown egg donor. During the pregnancy, M.F., S.T., and S.T.'s husband, C.T., jointly filed an agreed petition with the trial court to establish M.F.'s paternity and to "disestablish" S.T.'s maternity. The trial court denied the agreed petition and certified its order for interlocutory appeal, which we accepted. We address the following two issues[1]:

1. Whether the trial court erred when it denied M.F.'s request to establish paternity.

2. Whether a surrogate may petition a court to disestablish maternity.

We reverse the trial court's denial of M.F.'s request to establish paternity, but we affirm the trial court's denial of S.T.'s request to disestablish maternity. Accordingly, we affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On October 20, 2012, M.F., S.T., and C.T. jointly filed the following "Agreed Petition to Establish Paternity and 'Disestablish' Maternity":

> Comes now the birth[ ]mother of [I]nfant [T.], [S.T.], her husband [C.T.], and the biological father [M.F.] . . . and move this court to establish paternity and dis-establish maternity of the above[-]named infant, and, in support thereof, state as follows:
>
> 1. [On] May 28, 2012, [S.T.] underwent a procedure whereby anonymous donor eggs were combined with sperm from the biological father, and the resulting embroyo(s) were transferred to the birth[ ]mother.

---

[1] Although Steven Litz filed his appearance in this court and the trial court only on behalf of M.F., with S.T. and C.T. representing themselves, in filings to both courts Litz has carried the water for S.T. and C.T. in addition to presenting arguments for M.F. Moreover, S.T. and C.T. have not separately filed any briefs in this court, which suggests that they have joined in Litz's arguments on their behalf.

2. As a result of the procedure, [S.T.] became pregnant, and [she] has an estimated delivery date of February, 2013.

3. The biological father agreed to the procedure, as it was his specific desire to have [S.T.] carry a child for him, and he now states that he is the father of said child. His affidavit is attached hereto and incorporated herein by reference.

4. [S.T.] was married to [C.T.] at the time of the procedure. Their affidavit is attached hereto and incorporated by reference.

WHEREFORE, birth[ ]mother, her husband, and the biological father move this court to grant this petition . . . .

Appellant's App. at 5. In his attached affidavit, M.F. stated that he is "the biological father of the child [S.T.] is presently carrying" and that he is "assuming all rights and responsibilities of the child after its birth." Id. at 9.[2] And in their attached affidavit, S.T. and C.T. stated that S.T. "is not the biological mother nor is [C.T.] the biological father." Id. at 8.

On December 19, 2012, the trial court entered its order denying the parties' agreed petition. In particular, the court concluded that "a woman who gives birth to another human being is the legal mother of that human being," that there is "no authority for the court to create an order that de-establishes . . . maternity," and that, because C.T. is the husband of the birth mother, the law presumes he is the father at least until a post-birth genetic test can "determine the true paternity of the child." Id. at 13-14. The trial court certified its order for interlocutory appeal,[3] which we accepted.

_____

[2] We acknowledge the following comment in M.F.'s brief on appeal: "Though irrelevant to the legal issues presented here, M.F. is married, and his wife—once this matter is resolved—will be adopting the child." Appellant's Br. at 7.

[3] While this appeal was pending, S.T. gave birth to Infant T., and the parties submitted to genetic testing, which, the parties assert on appeal, confirmed the statements made in their affidavits. The parties

3

## DISCUSSION AND DECISION

### Standard of Review and Overview

The issue presented for our review is whether the trial court erroneously denied the parties' agreed petition, which sought to establish M.F.'s paternity and to disestablish S.T.'s maternity. In denying the agreed petition, the trial court made determinations of law, namely, that Indiana law does not allow for the pre-birth establishment of paternity in these circumstances or the disestablishment of maternity. We review questions of law de novo and owe no deference to the trial court's conclusions. In re Paternity & Maternity of Infant R., 922 N.E.2d 59, 60 (Ind. Ct. App. 2010), trans. denied.

Indiana has a statutory scheme for the establishment of paternity, but none for the establishment of maternity. See Ind. Code §§ 31-14-1-1 to -21-13. Nonetheless, "[i]t is the policy of this state . . . to recognize the importance of family and children in our society; . . . acknowledge the responsibility each person owes to the other; . . . [and] strengthen family life by assisting parents to fulfill their parental obligations[.]" I.C. § 31-10-2-1. Additionally, it is well-settled that it is in the best interests of a child to have his or her biological parentage established. See In re Paternity of S.R.I., 602 N.E.2d 1014, 1016 (Ind. 1992) ("there is a substantial public policy in correctly identifying parents and their offspring. Proper identification of parents and child should prove to be

tendered the results of those tests to the trial court, but the trial court declined to consider them, stating that it lacked jurisdiction "due to a pending appeal." Appellant's App. at 3. Indiana Appellate Rule 14(H) states that "[a]n interlocutory appeal shall not stay proceedings in the trial court unless the trial court or a judge of the Court of Appeals so orders." We interpret the trial court's comment as an order to stay the proceedings in the trial court pending this appeal. As the results of the genetic tests are not properly before this court on interlocutory appeal, we do not consider them.

in the best interests of the child for medical or psychological reasons."); see also I.C. § 31-14-4-1 (providing for the initiation of a paternity action).

### Issue One: M.F.'s Request to Establish Paternity

We first consider M.F.'s petition to establish paternity. In denying M.F.'s request, the trial court reasoned that C.T., as the husband of the birth mother, is the legal father unless M.F. can present clear and convincing evidence to the contrary after the child's birth. The trial court erred as a matter of law.

Although C.T., as the husband of the birth mother, was the presumptive father of Infant T., on questions of paternity our supreme court has made clear that a joint stipulation between the birth mother and the putative father "constitute[s] sufficient evidence to rebut the presumption." K.S. v. R.S., 669 N.E.2d 399, 405 (Ind. 1996); see also I.C. § 31-14-4-1 ("A paternity action may be filed by . . . [t]he expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly."); I.C. § 31-14-8-1 ("The court may enter a finding that a man is the child's biological father without first holding a hearing on the matter if: . . . the parties have filed a joint petition alleging[] that the man is the child's biological father."). Here, all parties stipulated in their jointly filed agreed petition that M.F. is the biological father of Infant T. Thus, the trial court erred when it denied the agreed petition with respect to M.F.'s pre-birth request to be named the child's father.

### Issue Two: Whether a Surrogate may "Disestablish" Maternity

We next consider whether a surrogate may disestablish maternity. In Infant R., the birth mother of Infant R. acted as a surrogate for the biological mother and the biological

5

father, who were married. The parties jointly petitioned to have the biological mother and father named the child's parents. The trial court granted the biological father's petition, but it denied the biological mother's petition, stating that "Indiana law holds the birth mother is the legal . . . mother." Infant R., 922 N.E.2d at 60.

We reversed on appeal. In doing so, we described Indiana statutory law as follows:

> no legislation enacted in this State specifically provides procedurally for the establishment of maternity; it is presumed that a woman who gives birth to a child is the child's biological mother. . . .
>     Nonetheless, we are confronted with reproductive technologies not contemplated when our Legislature initially sought to provide for the establishment of legal parentage for biological parents. Now, however, reproductive technologies have advanced to provide for gestational surrogacy where an egg from the biological mother is artificially inseminated with the sperm of the father and implanted into a host womb for incubation until birth. . . .

Id. at 61. In light of the lack of statutory authority, we held that "equity should provide an avenue of relief" for petitions to establish maternity. Id.

Moreover, we explained that, while Indiana's statutory scheme for the establishment of paternity is not wholly applicable to a petition to establish maternity, it nonetheless "provide[s] a procedural template" for the establishment of maternity. Id. at 61-62. In particular, we reasoned:

> We are aware of no reason why the public interest in correctly identifying a child's biological mother should be less compelling than correctly identifying a child's biological father. Indeed, establishing the biological heritage of a child is the express public policy of this State. See Ind. Code § 31-14-4-1. And thus, "when the purpose of the legislative body sought to be accomplished is clear, such construction shall be given the statute as will carry out such purposes, even though such construction is contrary to the strict letter thereof." N. Ind. Ry. Co. v. Lincoln Nat. Bank, 47 Ind. App. 98, 92 N.E. 384, 387 (1910). In these narrow circumstances, we find that the

6

paternity statutes provide a procedural template to challenge the putative relationship between the infant and [the birth mother].

> Procedure aside, this presumptive relationship will stand unless [the petitioner] establishes that she is, in fact, the biological mother of [the infant]. She must do so by clear and convincing evidence. Cf. Vanderbilt v. Vanderbilt, 679 N.E.2d 909, 911 (Ind. Ct. App. 1997) (finding that a presumption of paternity of a child born in a marriage may be rebutted by direct, clear, and convincing evidence that the husband was excluded as the child's father based upon blood test results), trans. denied. Clearly, this would involve more than simply an affidavit or a stipulation between the affected parties.

Id. (emphases added).

Considering our paternity statutes as a template for S.T.'s petition, it is well established that "[t]he Indiana Code has no provisions for the filing of an action to disestablish paternity. The statutes governing paternity actions . . . assume establishing, as opposed to disestablishing, paternity." In re Paternity of H.J.B. ex rel. Sutton v. Boes, 829 N.E.2d 157, 159 (Ind. Ct. App. 2005). Rather, paternity may be only "indirectly disestablish[ed]" once it "has been established in another man."[4] Id. at 159 n.2 & 160. The rationale for this distinction is to avoid having a child declared a "filius nullius," or "son of nobody," which "would carry with it countless 'detrimental financial and emotional effect[s].'" Id. at 160 & n.4 (quoting Johnson Controls, Inc. v. Forrester, 704 N.E.2d 1082, 1085 (Ind. Ct. App. 1999), trans. denied) (alteration original to H.J.B.); see also In re Paternity of E.M.L.G., 863 N.E.2d 867, 869-70 (Ind. Ct. App. 2007) (holding that the trial court "improperly determined that . . . legal fathers may disestablish paternity . . . .").

---

[4] An exception may exist if paternity is established by a paternity affidavit that is the product of fraud, duress, or material mistake of fact, but that is irrelevant to this appeal. See Ind. Code § 16-37-2-2.1(l)(1).

7

Thus, we hold that S.T.'s petition to disestablish maternity is not cognizable. It would not be in the best interests of the child, and would be contrary to public policy, to allow the birth mother to have the child declared a child without a mother. And it would be inconsistent to allow for petitions to disestablish maternity when petitions to disestablish paternity are forbidden. If this had been an adversarial proceeding, a party who opposed S.T.'s petition could have filed a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

However, our holding does not exclude the indirect disestablishment of maternity, such as in Infant R. The indirect disestablishment of maternity requires a putative mother to petition the court for the establishment of maternity and to prove her maternity by clear and convincing evidence, not simply by affidavit or stipulation. Infant R., 922 N.E.2d at 61-62. If the putative mother satisfies her burden of proof, the establishment of maternity in her would indirectly disestablish maternity in the birth mother.

But we are not presented with facts demonstrating maternity in any woman other than S.T. Indiana law presumes the birth mother of a child is the child's biological mother. Id. at 61. "[T]his presumptive relationship will stand unless [another woman] establishes that she is, in fact, the biological mother of [the child]." Id. at 62. No other woman has petitioned the court to establish maternity. As such, the trial court properly dismissed S.T.'s petition to disestablish her maternity.

**Conclusion**

In sum, we hold that the trial court erred as a matter of law when it denied the parties' petition to establish M.F.'s paternity. However, S.T.'s petition to disestablish

8

maternity is not cognizable and, as such, the trial court properly dismissed that request. Thus, we affirm in part, reverse in part, and remand with instructions for the trial court to enter an order establishing M.F.'s paternity.

Affirmed in part, reversed in part, and remanded with instructions.

BAILEY, J., and BARNES, J., concur.