In the Matter of the PATERNITY
AND MATERNITY OF
INFANT T.

No. 67A05–1301–JP–36.

Supreme Court of Indiana.

Nov. 1, 2013.

*PUBLISHED ORDER DENYING
PETITION TO TRANSFER*

This matter is before the Indiana Supreme Court on a petition to transfer jurisdiction filed by Appellant pursuant to Appellate Rule 57, following the Court of Appeals opinion issued on July 11, 2013. *See In re Paternity & Maternity of Infant T.,* 991 N.E.2d 596, 601 (Ind.Ct.App.2013). The Court has reviewed the decision of the Court of Appeals. Any record on appeal that was submitted has been made available to the Court, along with all briefs that may have been filed in the Court of Appeals and all the materials filed in connection with the request to transfer jurisdiction. Each participating member of the Court has voted on the petition. Each member of the Court has had the opportunity to voice that Justice's views on the case in conference with the other Justices, and each has voted on the petition.

Being duly advised, the Court now DENIES Appellant's petition to transfer jurisdiction. This appeal is at an end.

The Clerk is directed to send a copy of this order to all counsel of record. The Clerk is also directed to post this order to the court's website, and Thomson Reuters is directed to publish a copy of this order in the bound volumes of this Court's decisions.

All Justices concur, except RUSH, J., who dissents with separate opinion.

RUSH, J., dissenting from the denial of transfer.

I respectfully dissent from the denial of transfer. The relief the petitioner seeks would result in the court enforcing what amounts to a surrogacy agreement. Here the parties agreed that a surrogate will carry to term an anonymously-donated egg fertilized in vitro and will effectively "[w]aive parental rights [and] duties to [the] child" upon birth. Ind.Code § 31–20–1–1(6) (2008). The General Assembly has stated that such agreements are void and unenforceable. *Id.;* I.C. § 31–20–1–2 (2008). Though current parentage legislation does not contemplate assisted reproductive technologies, it is clear about not recognizing surrogacy agreements—and the Court of Appeals need not have made the issue more complicated than that.

**Facts and Procedural History**

In this case, a surrogate mother agreed to carry to term an embryo conceived from the sperm of the biological father and the egg of an unknown donor. Before the birth, however, the biological father, along with the surrogate and her husband, petitioned to establish the biological father's paternity and "disestablish" the surrogate's maternity. The trial court denied both requests, ruling that a father could not establish his paternity pre-birth and that it had no authority to disestablish maternity.

On interlocutory appeal, the Court of Appeals reversed the trial court on the paternity issue, but agreed that a birth mother could not directly "disestablish" maternity. *In re Paternity & Maternity of Infant T.,* 991 N.E.2d 596, 601 (Ind.Ct.App.2013). In doing so, the Court of Appeals considered the "paternity statutes as a template," and found that "[i]t would not be in the best interests of the child, and would be contrary to public policy, to allow

the birth mother to have the child declared a child without a mother." *Id.* at 600.

### Analysis

The Court of Appeals reached the correct result, but made the question unnecessarily complicated. There would be much to commend the Court of Appeals' thoughtful analysis if there were no controlling law on this matter. But the General Assembly has clearly directed that no Indiana court may enforce a surrogacy agreement "that requires a surrogate to ... [w]aive parental rights or duties to a child," or "[t]erminate care, custody, or control of a child." I.C. § 31–20–1–1(6)–(7). This is what the petitioner seeks to do here. Such agreements are "void" as a matter of public policy. I.C. § 31–20–1–2. And with the paternity statutes providing no explicit assistance in this matter, the General Assembly's clear disapproval of surrogacy agreements should foreclose any equitable experimentation in the courts and, thus, leave the birth mother as the legal mother unless and until another parent adopts the child.

Complex innovations like assisted reproduction are best addressed by legislatures—which can enact comprehensive, cohesive regulations, unlike courts' piecemeal decisions made through particular cases. Indeed, many jurisdictions now regulate alternative means of reproduction, *e.g.*, 750 Ill. Comp. Stat. Ann. 47 (West 2009); Tex. Fam.Code Ann. §§ 160.754–.757 (West 2008), and we have recognized the wisdom of such "formalities and protections" that safeguard not only the prospective parents but also the children that are created. *See Straub v. B.M.T. by Todd,* 645 N.E.2d 597, 601 (Ind. 1994); *cf. In re Adoption of Infants H.,* 904 N.E.2d 203, 207–08 (Ind.2009) (holding the prospective adoptive father of surrogate children did not comply with the Interstate Compact on the Placement of Children). But this particular case makes it unnecessary to wade into those broader questions.

### Conclusion

I would therefore grant transfer and decide this case on the narrow basis of Indiana Code section 31–20–1–1, and leave it to the General Assembly to consider broader legislation to guide and protect future children and families through the still-uncharted waters of assisted reproductive technologies.