**K.S., Appellant,**

v.

**R.S., Appellee.**

**No. 55S04–9602–CV–00162.**

Supreme Court of Indiana.

July 29, 1996.

George A. Lohmeier, Indianapolis, for appellant.

Michael A. Ksenak, Bowman & Ksenak, Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Does Indiana law permit a man who claims to be the biological father of a child born during the marriage of the child's mother

and another man to file a paternity action while the mother's marriage is still intact? We hold that it does.

### Facts

K.S. (mother), the mother of three children, has been married to her husband since 1979. Mother bore all three children during the course of her marriage to husband. The youngest child, D.S., who was born on October 22, 1992, is the subject of this action.

While married to husband, mother and her neighbor engaged in a sexual relationship. Neighbor claims that sometime during his sexual relationship with mother, D.S. was conceived, and that neighbor is therefore D.S.'s biological father.

Approximately one and one half years after D.S.'s birth, neighbor filed a petition to establish paternity in the Morgan Circuit Court. D.S. was neither named as a party nor otherwise represented by counsel or a guardian *ad litem.* Neighbor also filed with the trial court an agreed entry, which stated that neighbor was the biological father of D.S. The agreed entry provided for joint custody of D.S., with equal time with D.S. on an alternating seven day period. The agreed entry also provided that as long as there was this joint custody arrangement, no support would be paid from one party to another. Mother and neighbor signed the agreed entry and the trial court thereafter approved it.

Approximately eight months after the trial court approved the agreed entry, mother filed a motion to set aside the agreed entry pursuant to Ind.Trial Rule 60(B)(6), alleging that the agreed entry was void on two grounds: that the child was neither a party nor otherwise represented in the proceeding and that there was no physical evidence of neighbor's paternity. The trial court denied Mother's motion. Mother appealed, arguing that the trial court erred in denying her T.R. 60(B)(6) motion.

The Court of Appeals, "[r]elying on common law, public policy, and legislative mandate," did not reach the T.R. 60(B) issue but instead concluded that the trial court was without jurisdiction to hear a case "when a third person attempts to establish paternity of a child born during the marriage of the mother and her husband while their marriage remains intact." *K.S. v. R.S.,* 657 N.E.2d 157, 159 (Ind.Ct.App.1995).

### Discussion

#### I

#### A

■ Indiana Code § 31–6–6.1–2 (1993 and 1995 Supp.) expressly authorizes certain persons to file a paternity action. In particular, the statute states:

(a) A paternity action may be filed by the following persons:

(1) The mother or expectant mother.

(2) A man alleging that he is the child's biological father or that he is the expectant father of an unborn child.

(3) The mother and a man alleging that he is her child's biological father, or by the expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.

(4) A child.

We last examined this statute in *In re Paternity of S.R.I,* 602 N.E.2d 1014, 1016 (Ind.1992), where a man alleging to be the biological father of a child born during the mother's marriage to another man sought to bring a paternity action following the dissolution of that marriage. We held that this language "allows a man alleging that he is a child's biological father to file a paternity action. This provision makes no reference to the marital status of the mother. Thus, a putative father may establish paternity without regard to the mother's marital status," so long as the other requirements of the statute are met. *Id.* at 1016. But we were careful to limit our holding to the facts of that case. "Under these unusual circumstances," we said, the man "ought to have his day in court and an opportunity to present his evidence. Whether a cause of action like this one would be permitted while the mother's marriage is intact is not presented in this case, and we do not decide that question." *Id.*

The case before us now requires that we decide that question.

The Court of Appeals presents vigorous arguments in concluding that the text of the paternity statute does not confer the trial court with jurisdiction over this case and that public policy mandates that the trial court should not have such jurisdiction. While acknowledging that section 2(a)(2) of the paternity statute provides that "[a] paternity action may be filed by . . . a man alleging that he is the child's biological father," the Court of Appeals found that authorization subject to the purpose of the statute embodied in section 1.5: "The general assembly favors a public policy of establishing paternity under this chapter of a child born out of wedlock."

The Court of Appeals seized on two specific terms in the purpose section in making its argument—"establishing paternity" and "born out of wedlock." First, the appellate court found this action to violate the purpose of the paternity statute because it was brought to disestablish husband's paternity,[1] not establish neighbor's paternity. Second, the court found this action to violate the paternity statute because D.S. was not born out of wedlock; mother and husband were married at the time. We disagree with this analysis and conclude that neighbor may file a paternity action here.

■ We conclude that characterizing this case as one where paternity is sought to be disestablished is not accurate. Neighbor is seeking to establish that he is the biological father of D.S. This is not a situation where a man is seeking to disestablish his own paternity status, attempting to relieve himself of support obligations. In fact, in this regard this case is identical to *In re Paternity of S.R.I.* There the putative father also sought to establish his own paternity in the face of a statutory presumptive father. 602 N.E.2d at 1016. Just as we found the putative father in that case to be establishing, not disestablishing, paternity, we find the same of neighbor here.

■ As to the Court of Appeals's conclusion that the paternity statute is only available to establish paternity for children born out of wedlock, it is simply wrong to conclude that D.S. was not born out of wedlock.[2] While the paternity statute does not define "child born out of wedlock," Indiana common law is clear that the term wedlock refers to the status of the biological parents of the child in relation to each other. A child born to a married woman, but fathered by a man other than her husband, is a "child born out of wedlock" for purposes of the statute. *R.D.S v. S.L.S.,* 402 N.E.2d 30, 38 n. 2 (Ind. Ct.App.1980); *Pursley v. Hisch,* 119 Ind. App. 232, 235–36, 85 N.E.2d 270, 271 (1949) (citing *State of North Dakota v. Coliton,* 73 N.D. 582, 17 N.W.2d 546, 156 A.L.R. 1403 (1945)). Once again, *In re Paternity of S.R.I.* is instructive. There, like here, the child at issue was *born* while mother was married. 602 N.E.2d at 1016. Just as in that case, the fact that the child was born while mother was married does not establish that the child was born during wedlock.

■ Although the Court of Appeals presents strong policy reasons for depriving the

---

1. Ind.Code § 31–6–6.1–9 defines certain persons to be the "presumed biological father." That section provides:

   (a) A man is presumed to be a child's biological father if:

     (1) The man and the child's biological mother are or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, or dissolution;

     (2) The man and the child's biological mother attempted to marry each other by a marriage solemnized in apparent compliance with the law, even though the marriage is void under IC 31–7–6–2, IC 31–7–6–3, IC 31–7–6–4, or IC 31–7–6–6 or is voidable under IC 31–7–7, and the child is born during the attempted marriage or within three hundred (300) days after the attempted marriage is terminated by death, annulment, or dissolution;

     (3) The man acknowledged paternity in a writing filed with the state registrar of public statistics of the state department of health or with a local board of health; or

     (4) The man undergoes a blood test that indicates with at least a ninety-nine percent (99%) probability that that man is the child's biological father.

Here, Husband falls under (a)(1). There is no evidence that Neighbor took a blood test.

2. As such, it is unnecessary for us to decide whether the Court of Appeals is correct in concluding that the paternity statute is available to establish paternity *only* for children born out of wedlock.

trial court of jurisdiction over neighbor's paternity action, in the end we conclude that our legislature has expressly authorized such actions.[3] Nothing in the paternity act precludes a man otherwise authorized from filing a paternity action on the basis of the mother's marital status.[4]

### B

In holding that Indiana courts are not available for a man to seek to establish paternity of a child born during the marriage of the child's mother and another man while that marriage is still intact, the Court of Appeals quoted at length from Justice Scalia's plurality opinion in *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). *K.S.*, 657 N.E.2d at 163–64. The *Michael H.* case involved a constitutional challenge to the California paternity statute on facts similar to those before us here, *i.e.*, putative father sought to establish his paternity of a child born during the marriage of the child's mother and another man while that marriage was still intact. The California paternity statute provided that "the issue of a wife cohabitating with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." 491 U.S. at 115, 109 S.Ct. at 2338 citing Cal.Evid.Code Ann. § 621(a) (West Supp. 1989). This presumption was rebuttable by blood tests, but only if they were introduced by husband, or by wife, if the natural father filed an affidavit acknowledging paternity, and if the motion was made within two years after the birth of the child. *Id.* The puta-

tive father in *Michael H.* challenged the constitutionality of this statute, claiming that he had a liberty interest in establishing and maintaining a relationship with his biological child that was entitled to constitutional protection through the Due Process clause.

Justice Scalia's opinion advances a vigorous argument against the existence of any such constitutional right or liberty interest, *Michael H.*, 491 U.S. at 113–32, 109 S.Ct. at 2337–47, an argument, as we have just noted, that was very persuasive to the Court of Appeals in the case before us. However, Justice Scalia's opinion was a plurality opinion joined by three other justices, not a majority opinion of the court. Four other justices, in two separate opinions, concluded that the constitutional right and liberty interest advanced by the putative father existed and would have reversed the trial court. 491 U.S. at 136–57, 109 S.Ct. at 2348–60 (Brennan, J., dissenting, joined by Marshall and Blackmun, JJ.); 491 U.S. at 157–63, 109 S.Ct. at 2359–63 (White, J., dissenting). The deciding vote was provided by Justice Stevens. It was his view that, while the putative father might well have a constitutionally protected liberty interest in establishing and maintaining a relationship with his biological child, the California statute provided him with whatever due process of law he was entitled. 491 U.S. at 132–36, 109 S.Ct. at 2346–49 (Stevens, J., concurring in the judgment). As such, Justice Stevens reached the same result as that of the Scalia plurality although his constitutional analysis was closer to that of the dissenters.[5]

---

3. Strong as the policy reasons advanced by the Court of Appeals are, there are also countervailing considerations such as the putative father's purported constitutional rights, *see* part I–B of this opinion, and the child's interest in identifying the true father for psychological or medical reasons. *See In re Paternity of S.R.I.*, 602 N.E.2d at 1016.

4. The statute does refer to mother's marital status, as the Court of Appeals points out, in defining "presumed biological father" status. Ind. Code § 31–6–6.1–9(a)(1); *see* footnote 1, *supra*. While this presumption is important in determining ultimate paternity status, it does not effect the right of a person seeking to establish paternity to have his or her day in court.

5. This analysis of *Michael H.* in general, and the effect of Justice Steven's opinion in particular, is

supported by *Michael H.*, 491 U.S. 110, 136, 109 S.Ct. 2333, 2349, 105 L.Ed.2d 91 (Brennan, J., dissenting); *Davis v. Thornburgh*, 903 F.2d 212, 225 (3d Cir.1990), *cert. denied* 498 U.S. 970, 111 S.Ct. 436, 112 L.Ed.2d 420 (1990); *C.C. v. A.B.*, 406 Mass. 679, 686, 550 N.E.2d 365, 370 (1990). *See also In re J.W.T.*, 872 S.W.2d 189 (Tex.1994) (Texas Supreme Court held that statute preventing putative father from pursuing paternity action where mother married to another man violated putative father's due process rights under Texas constitution). The following opinions read *Michael H.* as does the Court of Appeals: *C.C. v. A.B.* 406 Mass. at 691, 550 N.E.2d at 373 (O'Connor, J., dissenting); *David V.R. v. Wanda J.D.*, 907 P.2d 1025, 1027–28 (Okl.1995); *Jack v. Jack*, 796 S.W.2d 543, 548 (Tex.Ct.App.—Dallas 1990). *See also Merkel v. Doe*, 63 Ohio Misc.2d 490, 496, 635 N.E.2d 70, 74 (Ohio Ct.Com.Pl.1993) (hold-

■ It may well be that putative fathers such as neighbor likely do have some constitutionally protected liberty interest in establishing and maintaining relationships with their biological children, but *Michael H.* certainly demonstrates that states can regulate that interest through properly drawn statutes.[6] Because we find that Indiana statutes permit putative fathers to maintain paternity actions under the facts of this case, we find it unnecessary further to define this liberty interest or the minimum requirements of such statutes and decline to do so.[7]

## II

After concluding that neighbor may file a paternity action pursuant to Ind.Code § 31–6–6.1–2, we now must address mother's argument that the trial court erred in failing to set aside the agreed entry under T.R. 60(B)(6). In addition, we must also address the Court of Appeals's conclusion that the agreed entry itself is void as against public policy.

■ Ind.Code § 31–6–6.1–2(c) provides that "[i]n every case, the child, the child's mother, and any person alleged to be the father are necessary parties to the action." In addition, a guardian ad litem should be appointed to protect the interests of a child in a paternity action. *In Re Paternity of S.R.I.*, 602 N.E.2d 1014 at 1017. Here, D.S. was not named a party in the paternity ac-

tion and no guardian ad litem was appointed on his behalf.

## A

■ Mother takes the position that because D.S. was not named a party to the paternity proceeding, the judgment adopting the agreed entry is necessarily void, citing to cases such as *Paternity of H.J.F.*, 634 N.E.2d 551 (Ind.Ct.App.1994) (paternity judgment where child not named as a party to action is void). Because of this, mother argues, the trial court was obligated to grant her motion to set aside the judgment under T.R. 60(B)(6),[8] which provides for relief from judgment where that judgment is void.[9]

The trial court disagreed with mother (and the court in *H.J.F.*) that a judgment where the child is not named a party is necessarily void. The trial court instead concluded that the judgment would be merely voidable and therefore not subject to collateral attack under T.R. 60(B)(6), which only applies to judgments that are void. In so concluding, the court looked to case law interpreting Trial Rule 19, which governs necessary parties for just adjudication. The case law clearly stated that failure to add a necessary party can result in waiver of that right in some cases. *Coak v. Rebber*, 425 N.E.2d 197 (Ind.Ct.App. 1981); *Arnold v. Dirrim*, 398 N.E.2d 442 (Ind.Ct.App.1979); and *Ligon Specialized Hauler, Inc. v. Hott*, 179 Ind.App. 134, 384 N.E.2d 1071 (1979). Because in some cases

---

ing that while the Ohio paternity statute granted putative father the right to establish his paternity of a child born during the marriage of the child's mother and another man while that marriage was still intact, the statute was unconstitutional because it infringed upon the intact family's fundamental right to marital privacy and its freedom to raise the children without state-authorized intrusion; citing *Michael H.* as identifying "the rights of the unitary family as fundamental and the Supreme Court's history of protecting the sanctity of the unitary family.")

6.  *Accord, Davis v. Thornburgh*, 903 F.2d at 225; *Weidenbacher v. Duclos*, 234 Conn. 51, 73, 661 A.2d 988, 998 (1995). *See also Turner v. Whisted*, 327 Md. 106, 117, 607 A.2d 935, 940 (1992) (holding a trial court ought to be able to consider and balance the different interests that were separately recognized by the majority and dissent in *Michael H.*).

7.  *See W.W.W. v. M.C.S.*, 161 Wis.2d 1015, 1029, 468 N.W.2d 719, 725 (1991) (under the view of the Justices not joining the Scalia plurality, "the analysis should turn on the level of commitment to the responsibilities of parenthood the father demonstrates.").

8.  Trial Rule 60(B)(6) reads: "On motion and upon such terms as are just the court may relieve a party ... from ... final judgment, including a judgment by default, for the following reasons: ... (6) the judgment is void...."

9.  Generally, a trial court is granted great discretion in determining whether to set aside a judgment pursuant to T.R. 60(B). *Gipson v. Gipson*, 644 N.E.2d 876 (Ind.1994). Mother asserts, however, that here, where she filed a T.R. 60(B)(6) motion to set aside a judgment that is void, the trial court does not have discretion because either the judgment is void or it is valid. *See Schoffstall v. Failey*, 180 Ind.App. 528, 389 N.E.2d 361 (1979).

the right is waivable, the court reasoned, a judgment where a necessary party is not named to the action is clearly not void, but simply voidable. The court also found support for its analysis in case law holding that only judgments in which the trial court lacks subject matter jurisdiction are void; judgments in which the trial court lacks personal jurisdiction are merely voidable. *Chapin v. Hulse,* 599 N.E.2d 217 (Ind.Ct.App.1992), *trans. denied; Trook v. Lafayette Bank and Trust Co.,* 581 N.E.2d 941 (Ind.Ct.App.1991), *trans. denied.*

Finally, the trial court emphasized that although a judgment like this one is not *per se* void, it is also not *res judicata.* While mother may have waived the right to claim the judgment is void because a necessary party was absent, the child would not be negatively affected in that the child would later be free to litigate any issues with respect to the child's interests, because *res judicata* does not apply. *See Kieler v. C.A.T. by Trammel,* 616 N.E.2d 34 (Ind.Ct.App. 1993), *trans. denied; J.E. v. N.W.S., by S.L.S.,* 582 N.E.2d 829 (Ind.Ct.App.1991), *trans. denied* (where child not made party to paternity action, child not barred from later relitigating its interests).

After reviewing the trial court's analysis and case law on this topic, we agree that failure to name a child as a party in a paternity action does not necessarily render the judgment or agreement void,. but instead merely voidable. Because the judgment is not necessarily void, the trial court was correct in refusing to set aside the judgment pursuant to T.R. 60(B)(6), which only applies to judgments that are void.

■ Mother also argues that the trial court judgment is void because there was insufficient evidence to show that neighbor, and not husband, is the father of D.S, as required by *In re Paternity of S.R.I.* In *S.R.I.,* we concluded that the putative father must put forth evidence that is direct, clear, and convincing to rebut the presumption that a child born during marriage is legitimate. *Id.* at 1016.

We believe that the settlement agreement and stipulation, effectively representing as it did the testimony of neighbor and mother as to neighbor's paternity, constituted sufficient evidence to rebut the presumption. Because of this, we hold that the trial court was under no obligation to set aside the judgment pursuant to T.R. 60(B)(6), and therefore did not err in refusing to set aside its judgment. If mother had doubt about the sufficiency of the evidence, she should not have signed the agreed entry or should have attacked the judgment under another provision of T.R. 60. However, here she chose to attack the judgment pursuant to T.R. 60(B)(6), claiming that the judgment was void. Because the judgment is not void, the trial court did not err in refusing to set it aside pursuant to T.R. 60(B)(6).

### B

■ Although the trial court did not err in refusing to set aside the judgment pursuant to T.R. 60(B)(6), we must address the Court of Appeals's conclusion that the agreement itself was void as against public policy, so that the trial court's judgment adopting the agreement was invalid in any event.

The Court of Appeals maintained that the agreement was contrary to public policy in that "[a]greements such as the one made between R.S. [Neighbor], Mother and Husband, have the potential to contract away the rights of children to the support of both parents of the marriage," and cited to our recent case, *Straub v. B.M.T. by Todd,* 645 N.E.2d 597 (Ind.1994), for the proposition that parents do not have the right to contract away support by a parent for the child. 657 N.E.2d at 165.

In *Straub,* we addressed the enforceability of a contract between two adults engaged in a sexual relationship to the effect that the father would not be held financially responsible in the event that a child was born. We held that while we generally enforce properly formed contracts, a contract may be void as against public policy in certain very limited circumstances. The contract in *Straub* was one such example because the right to support lies with the child and cannot be contracted away by others, *id.* at 600; the consideration for the contract was sexual intercourse, *id.* at 601; and the contract did

not contain certain formalities generally thought necessary in agreements enabling childless individuals to bear children, *id.* It was this unique set of circumstances that led our court to hold that contract void as against public policy.

The agreed entry here, which was ultimately adopted by the trial court, provides, in pertinent part:

4. The parties further stipulate and agree that because of the joint custody arrangement, there shall be no support paid from one party to the other party unless the parties decide that it would be best for one party to have more than 50% of the actual physical custody of the minor child and at that time the parties will negotiate a support figure between the parties.

Although not without some doubt, we do not believe that this agreement constitutes contracting away D.S.'s right to child support from a parent, as was clearly prohibited by *Straub.* This agreement merely states that, at this time, there is no need for one parent to provide another parent with support payments. It in no way provides that one parent is not now and never will be responsible for supporting D.S. We might also add, however, that although we hold that the agreement is not void, because D.S. was not named as a party to the action adopting the agreement, D.S. will not be barred by *res judicata* from later challenging this agreement.

### Conclusion

Therefore, we (i) vacate the Court of Appeals's opinion and hold that under Ind.Code § 31–6–6.1–2, a cause of action exists when a third party attempts to establish paternity of a child born into a marriage which remains intact; and (ii) affirm the trial court's denial of mother's motion under T.R. 60(B)(6).

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

DeBRULER, J., dissents without separate opinion.