In the Matter of ESTATE OF Randall H. LAMEY, Deceased, Yvonne K. Lamey, Administratrix, Appellant,

v.

Raymond LAMEY, et al., Appellees.

No. 49A04–9704–CV–167.

Court of Appeals of Indiana.

Dec. 22, 1997.

Transfer Denied April 23, 1998.

Michael Cheerva, Phelps & Fara, Indianapolis, for Appellant.

Steve Carlock, Indianapolis, for Appellees.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Respondent, Yvonne Lamey ("Mother"), on her own behalf and on behalf of her minor child, V.L., brings this interlocutory appeal challenging the trial court's order requiring Mother and V.L. to submit to blood testing to determine whether V.L. is the biological daughter of Randall Lamey ("Decedent"). We reverse and remand for further proceedings consistent with this opinion.

### Issue

We restate the issue raised on appeal as: when a petition to determine heirship has been filed, can a decedent's former wife and child be ordered to submit to paternity blood testing when the child was born into an intact marriage and the decedent never challenged his paternity in the child.[1]

### Facts and Procedural History

Mother and Decedent were married on July 15, 1978. V.L. was born during this marriage, on November 14, 1985, and Mother and Decedent remained married for approximately ten more years until their divorce on or about July 19, 1995. When Decedent and Mother divorced, their Decree of Dissolution of Marriage stated there was one child born of the parties, V.L., born November 14, 1985. (R. 68). Decedent died intestate on June 30, 1996. On July 10, 1996, Mother, on behalf of V.L., filed a Petition for Appointment of a Personal Representative and for Supervised Administration of Decedent's estate. On August 28, 1996, Decedent's brother, Raymond

---

1. In the present case, this issue is dispositive. Thus, we decline to address whether a Guardian Ad Litem must be appointed to represent V.L.'s best interests and whether a hearing to determine V.L.'s best interests must be conducted prior to the blood tests.

Lamey ("Uncle"), filed a Petition to Determine Heirship. On October 11, 1996, Uncle moved in open court for an order for blood tests relating to the heirship of V.L.[2] The trial court granted Uncle's request on March 19, 1997, and certified its order for interlocutory appeal in accordance with Appellate Rule 4(B)(6). We accepted jurisdiction of this appeal on May 20, 1997.

### Discussion and Decision

Initially, we note our standard of review. We generally review interlocutory orders under an abuse of discretion standard. *Hollingsworth v. Key Benefit Adm'rs, Inc.,* 658 N.E.2d 653, 655 (Ind.Ct.App.1995), *trans. denied.* "An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *Id.* (internal citation omitted).

Both Mother and Uncle urge this Court to categorize the present case as either a "Paternity" case or an "Heirship" case. However, the issues raised herein are complex and necessarily involve elements of both bodies of law, therefore we decline such invitation. Mother further asserts that the trial court abused its discretion in granting Uncle's request to order blood testing to determine whether V.L., who was born to an intact marriage, was the biological child of Decedent. We agree.

Indiana Code Section 29–1–2–1(d)(1) provides in pertinent part that when a person dies intestate and without a spouse, his net estate shall be distributed to "the issue of the intestate". This section further provides that "[i]f there is no surviving spouse or issue of the intestate, then to the surviving parents, brothers and sisters ... of the intestate." Ind.Code § 29–1–2–1(d)(3). Because Decedent died without a spouse and V.L. is his only living child (or issue), probate law indicates she is his sole heir and thus will

inherit his entire estate. Uncle, however, in requesting paternity blood testing under the auspices of an heirship determination request, challenges V.L.'s right to inherit Decedent's estate.

Indiana law provides that "[a]t any time during the administration of a decedent's estate, ... any interested person may petition the court to determine the heirs of said decedent and their respective interests in the estate or any part thereof." Ind.Code § 29–1–6–6(a). Because Uncle, according to intestate succession law, would be eligible to inherit a portion of Decedent's estate if V.L. was deemed not to be an heir, he is a potential heir and thus an interested person with standing to petition the court to determine the heirs of Decedent.

Until recently, Uncle's request to determine Decedent's heirs would be quickly resolved. A person's heirs are determined at the time of the decedent's death and encompass those persons entitled to take under the statutes of intestate succession *on decedent's death intestate* unless otherwise defined or limited by a will. Ind.Code § 29–1–1–3 (emphasis added). Additionally, Indiana Code Section 29–1–2–6 states as follows:

> Descendants of the intestate, begotten before his death but born thereafter, shall inherit as if they had been born in the lifetime of the intestate and had survived him. *With this exception, the descent and distribution of intestate estates shall be determined by the relationship existing at the time of the death of the intestate.*

(Emphasis added). Thus, V.L., who was the only child born during the marriage of Mother and Decedent, is Decedent's sole heir.

The aforementioned statutes, coupled with our state's case law serves as further evidence that our Legislature intended for *all* heirship relationships to become absolute at decedent's death, except as provided for

---

**2.** Uncle, a medical doctor, arranged for a sample of Decedent's blood to be taken and preserved following his death. Uncle then petitioned the trial court to be appointed special administrator of the estate. Upon granting of such order, Uncle next petitioned the court to order Dr. Michael Clark to release the Decedent's blood to the Department of Medical Genetics at the I.U. Medical Center ("Medical Center") and to direct the Medical Center to prepare and process Decedent's blood for future paternity testing. On July 18, 1996, Uncle's request was granted and Decedent's blood was preserved and made available for testing. The order appointing Uncle special administrator was later vacated.

by statute relating to a child born out of wedlock. *See, e.g., Montgomery v. Estate of Montgomery,* 677 N.E.2d 571 (Ind.Ct.App. 1997) (holding that a surviving spouse's share of real estate vests at death); *Scott v. Scott,* 238 Ind. 474, 150 N.E.2d 740 (1958) (holding that while children may become heirs on the death of their parent, they do not have a vested interest in the property during the parent's lifetime, but have an expectancy which is dependant on the law in force at the time of the parent's death); *State ex rel. Paxton v. Porter Superior Court,* 467 N.E.2d 1205 (Ind.1984) (holding that divorce proceedings terminate in their entirety upon the death of one of the parties).

■ In an attempt to circumvent this "time of death" policy found in our state's probate laws, Uncle asserts Ind.Code § 29–1–2–7 allows him to request paternity blood testing if such request is made within five months of Decedent's death. Uncle's reliance on this statute is misplaced. Indiana Code Section 29–1–2–7(b) provides in part:

> For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if:
>
>> (1) the paternity of the child has been established by law in a cause of action that is filed:
>>
>>> (A) during the father's lifetime; or
>>>
>>> (B) within five (5) months after the father's death; or
>>
>> (2) the putative father marries the mother of the child and acknowledges the child to be his own.

Contrary to Uncle's assertion, a careful reading of the language found in this statute provides a limited opportunity for an illegitimate child or putative father to *establish* paternity in a decedent, not an avenue for third parties to *disestablish* paternity following a presumptive father's death.

Uncle counters that in light of several recent Indiana Supreme Court decisions, the presumption that a child born during a marriage is the biological child of the father is no longer conclusive and may be rebutted by direct, clear and convincing evidence. In so doing, Uncle is asking this Court to judicially alter the relationship between V.L. and Decedent which was "frozen" at Decedent's death according to Indiana's probate laws.

■ Uncle is correct in his assertions that a presumptive father's paternity may be rebutted by "direct, clear, and convincing evidence," *R.D.S. v. S.L.S.,* 402 N.E.2d 30, 31 (Ind.Ct.App.1980), and that blood tests indicating at least a ninety-nine percent probability that a man is the biological father of a child constitutes clear and convincing evidence of paternity. Ind.Code § 31–14–7–1(4). However, Uncle is wrong in assuming that, by virtue of petitioning the court to determine heirship, he has automatic standing to petition the court to order paternity blood testing for a child for whom he is not also asserting his own paternity.

■ A man is presumed to be a child's biological father if the "man and the child's biological mother are or have been married to each other ... [and the] child is born during the marriage or not later than three hundred (300) days after the marriage is terminated by death, annulment, or dissolution[.]" Ind.Code § 31–14–7–1(1)(A) and (B). Mother and Decedent were married on July 15, 1978. V.L. was born on November 14, 1985. The marriage was dissolved on July 19, 1995. Thus, the undisputed facts show that V.L.'s birth took place during Mother and Decedent's marriage. Accordingly, V.L. is presumed to be Decedent's biological child and thereby entitled to inherit Decedent's entire estate. Moreover, according to our probate laws, this presumption for heirship purposes became irrefutable upon Decedent's death and, thus, cannot now be challenged by Uncle.

■ Indiana's paternity statute states that the only people authorized to file paternity actions are the mother, a man alleging to be a child's biological father (the "putative father"), both the mother and putative father filing jointly, or the child. Ind.Code § 31–14–4–1. Uncle is not alleging to be V.L.'s biological father and has no direct interest in any paternity proceedings involving V.L., other than his interest to illegitimatize her so that he may become eligible to inherit a portion of Decedent's estate. Thus, he has

no standing under our paternity statutes to try to establish or disestablish V.L.'s paternity.[3] In fact, Uncle is attempting to do what Decedent himself would be precluded from doing if he were still alive.

It is well established in Indiana case law that a divorce decree can establish paternity. *See Eytchison v. Burgess*, 581 N.E.2d 976 (Ind.Ct.App.1991). While a divorce decree does not bind non-parties who have standing under our paternity statute to establish paternity, it is also well established that a paternity finding in a divorce decree does conclusively bind the parties to the divorce. *In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016–17 (Ind.1992). Our supreme court recently clarified this rule in *Russell v. Russell*, 682 N.E.2d 513 (Ind.1997), where it stated:

> In many cases, the parties to the dissolution will stipulate or otherwise explicitly or implicitly agree that the child is a child of the marriage. In such cases, although the dissolution court does not identify the child's biological father, the determination is the legal equivalent of a paternity determination in the sense that the parties to the dissolution—the divorcing husband and wife—will be precluded from later challenging that determination, except in extraordinary circumstances.

*Id.* at 518 (citing *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind.1990)). The facts in the present case show that both Mother and Decedent explicitly agreed to the finding contained in their Dissolution of Marriage Decree that V.L. was a child born of the marriage. Thus, despite Ind.Code § 31–14–4–1, and in view of *Russell*, if Decedent were alive today, he would be unable to challenge his paternity in V.L.[4]

Uncle asserts that he is not bound by the above-mentioned statutorily imposed limitations because he is not bringing an action to determine paternity, but is merely seeking to determine heirship.[5] As mentioned above, in the present case there is no practical difference between these two types of actions. Moreover, the laws of this state do not expressly authorize a third party, who is *not* asserting paternity in the child, to petition the court for a mandatory determination of a child's paternity, under the guise of an "heirship" challenge, when the child was born into an intact marriage. We decline Uncle's invitation to judicially create such a law.

Uncle further asserts that while V.L. was admittedly born during the marriage of Decedent and Mother, she is not necessarily a child "born in wedlock". In support of his argument, Uncle directs our attention to *K.S. v. R.S.*, 669 N.E.2d 399 (Ind.1996), where our supreme court recently held that a "child born to a married woman, but fathered by a man other than her husband, is a child 'born out of wedlock' for purposes of the [paternity] statute." *Id.* at 402 (citation omitted). Thus, Uncle argues that while legitimacy is presumed in the present case, it is not conclusive, and while V.L was born into an intact marriage, according to our supreme court, she may still be a "child born out of wedlock" and therefore may not be a "legitimate" heir of Decedent. Thus, Uncle argues that in light of the holding in *K.S. v. R.S.* the trial court's order requiring Mother and V.L. to submit to blood tests to determine whether Decedent was, in fact, V.L.'s biological father should be upheld.

We decline to accept Uncle's invitation to extend our supreme court's holdings in *K.S.*

---

3. While V.L.'s heirship status with regards to Decedent for purposes of heirship became absolute upon Decedent's death, any party authorized under the paternity statute may still seek to establish paternity over V.L.

4. Uncle's reliance on *Fairrow* is equally unpersuasive. There, our supreme court found that eleven years was not an unreasonable amount of time for a former husband to file a motion for relief from a child support judgment after learning he did not have the trait for sickle cell anemia and thus could not have been the father of the child who had the disease when the mother

also lacked the trait. However, in so doing, the Court stressed the uniqueness of that case stating: "In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a *new tactical nuclear weapon* for divorce combatants." *Fairrow*, 559 N.E.2d at 600 (emphasis added).

5. Despite Uncle's insistence that this is an heirship action, he relics on the definition of "child born out of wedlock" found exclusively in paternity and divorce cases in order to negate the fact that V.L. was born into an intact marriage.

*v. R.S.*, which was decided in the context of a putative father attempting to *establish* paternity in a child of an intact marriage, to the present case. We believe that our supreme court did not intend the potential harmful effect that such an extension of its decision in *K.S. v. R.S.* would have on a child's ability to inherit via intestate succession when the child was born during an intact marriage but not formally adopted by the presumptive husband. In *K.S. v. R.S.*, our supreme court concluded that the putative father's action was permissible and did not constitute an action to disestablish paternity because the putative father's action was seeking to *establish* paternity in himself. In so doing, the Court explained, "[n]othing in the paternity act precludes a man *otherwise authorized* from filing a paternity action on the basis of the mother's marital status." *Id.* at 403 (emphasis added).

Simply put, the facts in the present case are clearly distinguishable from those faced by our supreme court in *K.S. v. R.S.* Here, there is no putative father and Uncle is *not otherwise authorized* to file a paternity action because he is not asserting his own paternity in V.L. Moreover, V.L. was born into an intact marriage and held out to the public by the Decedent as his daughter, notwithstanding his divorce from Mother, until his death.

In *K.S. v. R.S.*, the Court did not indicate that it considered the situation at hand. Here, a third party, who is *not* asserting paternity, is challenging the presumption that a child born into an *intact* marriage is the biological child of both the husband and wife, following the husband's death, in an effort to illegitimate the child so that the third party may be deemed an heir of the child's presumptive father. Consequently, we believe that our supreme court intended its holding in *K.S. v. R.S.* to be narrowly construed to mean only when a third party seeks to *establish* paternity over a child born into an intact marriage may the presumptive father-husband's status as to paternity be overcome. Then, and only then, may such a cause of action be allowed. To hold otherwise would be contrary to our state's long held public policy against the disestablishment of paternity which is reflected in our state's statutory and common law. To allow such a cause of action would abrogate our public policy of promoting family harmony. Moreover, the statutory provisions for determining heirship, unlike our paternity statutes, do not have age limitations. Thus, Uncle's proposal could result in families torn asunder in vying for a father's estate. Thus, in ordering Mother and V.L. to submit to blood tests, the trial court misinterpreted the law.

For the foregoing reasons, we reverse the trial court's judgment, vacate the order for paternity blood testing, and remand this case for further proceedings in accordance with this opinion.

DARDEN, J., concurs

KIRSCH, J., concurs in result with separate opinion.

KIRSCH, Judge, concurring in result.

Although I fully concur in the result set forth in the majority opinion and in the reasoning upon which it rests, I am reluctant to join with the majority in their conclusion that under no circumstances can the paternity of a child born during an intact marriage be challenged in heirship proceedings. I have no such reluctance, however, in concluding that under the circumstances of this case, where the child was born during an intact marriage which was later judicially dissolved in a proceeding in which the decedent acknowledged paternity, the trial court abused its discretion by allowing such a challenge.