**JOHNSON CONTROLS, INC., Donald E. Foley d/b/a Foley Construction, Accu–Construction Services, Inc. d/b/a Accu–Construction and Maintenance Services, Inc., Appellants–Defendants,**

v.

**Lesli FORRESTER, Administrator of the Estate of Timothy D. Forrester, Individually and as Parent and Legal Guardian of Tory Ray Forrester, Minor, Appellee–Plaintiff.**

No. 41A01–9805–CV–192.

Court of Appeals of Indiana.

Jan. 27, 1999.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for Appellants–Defendants.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, David W. Stewart, Stewart & Stewart, Carmel, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge

### STATEMENT OF THE CASE

Johnson Controls, Inc., Donald E. Foley d/b/a Foley Construction, Accu–Construction Services, Inc. d/b/a Accu–Construction and Maintenance Services Inc. (collectively "Johnson Controls") bring an interlocutory appeal from the trial court's denial of a motion to compel discovery and a motion for physical examination. Lesli Forrester ("Wife"), Administrator of the Estate of Timothy D. Forrester ("Decedent"), Individually and as Parent and Legal Guardian of T.R.F., a Minor, filed a wrongful death action against Johnson Controls alleging that Johnson Controls is responsible for Decedent's death. Among other things, Wife seeks money damages on behalf of T.R.F. for the loss of love and affection suffered by T.R.F. due to the death of Decedent. In its answer, Johnson Controls denied that Decedent is the biological father of T.R.F. Johnson Controls filed its motion to compel discovery seeking certain health records and other documents and also filed a motion for physical examination to obtain blood or genetic testing to disestablish Decedent's paternity of T.R.F. Following a hearing, the trial court denied both motions. We will state relevant facts in our discussion where necessary.

We affirm.

## ISSUE

The sole restated issue presented for our review is whether a third party in a wrongful death action may seek to disestablish paternity and, thus, the statutory beneficiary status of a dependent child born into an intact marriage when the decedent, during his lifetime, did not challenge such paternity.

## DISCUSSION AND DECISION

We begin our analysis by noting that this is a wrongful death action. However, we must also note that the issue raised necessarily involves elements of paternity and heirship. Indiana statutes involving wrongful death, paternity, and inheritance are interrelated and our task is to interpret and apply these statutes under the specific facts and circumstances presented. *Lucas v. Estate of Stavos*, 609 N.E.2d 1114, 1121 (Ind.Ct.App. 1993), *trans. denied.*

■ Wife filed this wrongful death action seeking, among other damages, money damages for the emotional loss suffered by T.R.F. due to Decedent's death. Indiana's

wrongful death statute, Indiana Code Section 34–1–1–2 [1] provides in relevant part:

> When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recoverable for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the *dependent children*, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

(emphasis added). Because actions for wrongful death are purely statutory and in derogation of the common law, the statute creating the cause must be strictly construed, permitting recovery of only those damages specifically prescribed. *Estate of Miller v. City of Hammond*, 691 N.E.2d 1310, 1312 (Ind.Ct.App.1998), *trans. denied*. Although pecuniary loss is the foundation of a wrongful death action, Indiana has long recognized recovery of emotional damages for spouses and dependent children. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911–912 (Ind.Ct.App.1994), *opinion adopted by* 678 N.E.2d 110 (Ind.1997). A decedent's minor children may recover for loss of parental training and guidance as well as for the loss of their parent's care. *Id.* at 911.

The issue in the instant case is whether, through discovery, Johnson Controls may challenge T.R.F.'s status as a statutory beneficiary in a wrongful death case by attempting to disestablish paternity even though T.R.F. was born into an intact marriage and Decedent, during his lifetime, did not challenge his paternity of the child. The term "dependent children" as used in the wrongful death statute includes any legitimate child who has the right to maintain a claim for inheritance against the decedent's estate under the laws of intestate succession or to enforce parental obligations under the paternity statute against the decedent's estate.[2] *S.M.V. v. Littlepage*, 443 N.E.2d 103, 110 (Ind.Ct.App.1982), *trans. denied*. Thus, the wrongful death statute "specifically links a beneficiary's [r]ight to recovery under the [statute] with his or her [r]ight to receive a distribution of the decedent's personal property." *Melvin v. Patterson*, 965 F.Supp. 1212, 1217 (S.D.Ind.1997).

Because of the necessary interrelationship between wrongful death and heirship, we find our decision in *Estate of Lamey v. Lamey*, 689 N.E.2d 1265 (Ind.Ct.App. 1997), *trans. denied*, instructive. In *Lamey*, the decedent's brother filed a petition to determine heirship and requested that paternity blood tests be performed to determine whether the child, who was born into an intact marriage, was the decedent's biological child and, thus, entitled to inherit the decedent's estate. Looking to our state's probate laws, we determined that our Legislature intended for all heirship relationships to become absolute at decedent's death, except as provided for by statute relating to a child born out of wedlock. *Id.* at 1267–68 (citing IND.CODE § 29–1–1–3 [3] and § 29–1–2–6 [4]). Accordingly, we reasoned that the heirship

---

1. This section was repealed and recodified as Indiana Code Section 34–23–1–1, effective July 1, 1998.

2. Indeed, when paternity has been established, an illegitimate child may qualify as a dependent child under the wrongful death statute. *Lucas*, 609 N.E.2d at 1120–21.

3. Indiana Code Section 29–1–1–3 defines "Heirs" as "those persons . . . who are entitled under the statutes of intestate succession to the real and personal property of a decedent *on the*

*decedent's death intestate*, unless otherwise defined or limited by the will." (emphasis added)

4. Indiana Code Section 29–1–2–6 states:

Descendants of the intestate, begotten before his death but born thereafter, shall inherit as if they had been born in the lifetime of the intestate and had survived him. *With this exception, the descent and distribution of intestate estates shall be determined by the relationship existing at the time of the death of the intestate.* (emphasis added).

relationship between the child and the decedent is "frozen" at the decedent's death. *Lamey*, 689 N.E.2d at 1268.

Due to the interrelationship between wrongful death and heirship, we conclude that the reasoning in *Lamey* is applicable here and, thus, the relationship between T.R.F. and Decedent was fixed upon Decedent's death for purposes of T.R.F.'s status as a beneficiary under the wrongful death statute. Therefore, we turn to our paternity laws to determine the relationship which existed between T.R.F. and Decedent at the time of Decedent's death.

Indiana Code Section 31–14–7–1(1)(A) provides that a man is presumed to be a child's biological father if the "man and the child's biological mother are or have been married to each other ... [and the] child is born during the marriage or not later than three hundred (300) days after the marriage is terminated by death, annulment, or dissolution[.]" Johnson Controls concedes that T.R.F. was born during the marriage of Decedent and Wife.[5] Accordingly, T.R.F. is presumed to be Decedent's biological child for purposes of inheritance under the laws of intestate succession and, in this case, for purposes of recovery in wrongful death. Moreover, as in the case of heirship described in *Lamey*, the presumption that T.R.F. is a statutory beneficiary under the wrongful death statute became irrefutable upon Decedent's death and cannot now be challenged by Johnson Controls.

■ Johnson Controls correctly maintains that generally a presumptive father's paternity may be rebutted by direct, clear and convincing evidence. *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind.1990). We further agree with Johnson Controls that a child born into an intact marriage but fathered by a man other than the husband is, unfortunately, a child born out of wedlock under our paternity laws. *R.D.S. v. S.L.S.*, 402 N.E.2d 30, 38 n. 2 (Ind.Ct.App.1980). However, Johnson Controls concedes that it has no standing to bring a paternity action. *See* IND.CODE § 31–14–4–1. Nevertheless, in support of its argument that it should be able

to rebut the presumption of paternity, Johnson Controls argues that we should look neither to *Lamey's* heirship reasoning nor to the requirements of our paternity statutes for guidance because Johnson Controls has not "filed" a paternity action and is not seeking to disestablish paternity or heirship. Instead, Johnson Controls argues that it merely seeks to establish that Decedent "is not the father of the child on whose behalf damages are being sought" in wrongful death. Brief of Appellant at 17. We see no practical difference as the end result and the detrimental financial and emotional effect on the child is the same. The goal of Johnson Controls' discovery requests is to disestablish paternity. To allow Johnson Controls to make such a challenge to a child born into an intact marriage where the decedent did not challenge paternity during his lifetime would open the door for a paternity challenge in every wrongful death case where the decedent is survived by a dependent child. The public policy of this state promoting family harmony will not allow such attacks.

We note that in *K.S. v. R.S.*, 669 N.E.2d 399, 402 (Ind.1996), our supreme court held that, in a paternity case, a putative father may be permitted to establish his own paternity of a child born into an intact marriage. In light of our supreme court's decision in *K.S. v. R.S.*, in *Lamey* we distinguished between an attempt by a putative father to *establish* his own paternity in the face of a statutory presumptive father and a third party's attempt to *disestablish* paternity under the guise of another proceeding. *Lamey*, 689 N.E.2d at 1270. Specifically, this court stated:

> [W]e believe that our supreme court intended its holding in *K.S. v. R.S.* to be narrowly construed to mean only when a third party seeks to *establish* paternity over a child born into an intact marriage may the presumptive father-husband's status as to paternity be overcome. Then, and only then, may such a cause of action be allowed. To hold otherwise would be contrary to our state's long held public policy against the disestablishment of pa-

---

5. The record does not indicate the date upon which Decedent and Wife were married. However, the parties acknowledge that T.R.F. was born on September 6, 1995, during the marriage of Decedent and Wife.

ternity which is reflected in our state's statutory and common law.

*Id.* (emphasis in original). As did the court in *Lamey,* we decline to extend the holding of *K.S. v. R.S.* to the unique circumstances presented here.

We fail to see the absurd result or inequity argued by Johnson Controls which would result in our conclusion that T.R.F. is irrefutably presumed to be the biological child of Decedent for purposes of recovery in wrongful death. Specifically, Johnson Controls makes much of the fact that Wife and Decedent were separated at the time of Decedent's death and that there is no evidence that has been brought forth at this point in the proceedings that Decedent had any contact with T.R.F. prior to his death. Be that as it may, Johnson Controls is free to argue at trial that the alleged lack of parental relationship or contact between T.R.F. and Decedent should reduce the amount of emotional damages recoverable on behalf of T.R.F.

Finally, Johnson Controls urges that the import of the trial court's order is not merely a denial of its discovery requests but the removal of the issue of Decedent's paternity from this case altogether. The trial court was absolutely correct in doing so and did not abuse its discretion. The issue of Decedent's paternity in T.R.F. is presumed and any challenge is hereafter precluded.

Affirmed.

BAKER, J. and ROBB, J. concur.