In re the Matter of the **ESTATE OF Michael LONG, Deceased,**

**Roger Long, Personal Representative.**

**No. 38A02–0306–CV–526.**

Court of Appeals of Indiana.

March 18, 2004.

George O. Lopez, Hinkle, Racster, Lopez & Clamme, Portland, IN, Attorney for Appellant.

Douglas K. Mawhorr, Brooke Mawhorr, PC, Muncie, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Roger Long, personal representative of the estate of Michael Long, and Shelly King Long, ex-wife of Michael Long (collectively referred to as the "Petitioners"), appeal the trial court's order on their Petition to Determine Heirship and denial of their request for DNA testing. We reverse and remand.

*Issue*

Petitioners raise the following issue for our review: whether the trial court prop-

erly denied their request for DNA testing and determined Q.L. to be an heir to Michael's estate without considering any of their proffered evidence.

### Facts and Procedural History

Michael and Shelly Long had three children from a marriage which ended in divorce. Michael then married Tammy Long, and he was still married to her when he died on February 8, 2002. Q.L. was born to Tammy on October 7, 2002.

A supervised estate was opened for Michael and Roger Long was appointed a co-personal representative.[1] After Q.L. was born, the Petitioners filed a Petition to Determine Heirs and for DNA Testing. Following a hearing and an opportunity for each party to brief the issues, the trial court issued the following order denying the Petitioners' requests:

> The parties, by counsel, having appeared before this Court and having submitted their respective briefs relative to the above entitled motions, the Court, after a thorough reading of *Lamey* and consideration of the parties' arguments now finds the argument of P.R. Shelly Long King[2] contrary to law and therefore denies the Petition for D.N.A. testing.
>
> As pertains to the request the Court determine the heirs of the estate, the parties agree that the decedent and [Q.L.]'s mother were lawfully married at the time of the decedent's death, that [Q.L.] was conceived during the marriage, and that he was born within 300 days of the date of death. The Personal Representative orally moves the Court

to determine only the status of [Q.L.] as an heir.

> Based on the stipulations made of record on April 30, 2003, the Court now finds [Q.L.] is an heir of the decedent.

Appellant's Appendix at 6 (footnote added).[3] Petitioners sought and were granted permission to pursue this interlocutory appeal. Additional facts will be supplied as necessary.

### Discussion and Decision

#### I. Standard of Review

 We generally review interlocutory orders under an abuse of discretion standard. *Hollingsworth v. Key Benefit Adm'rs, Inc.*, 658 N.E.2d 653, 655 (Ind.Ct. App.1995), *trans. denied.* "An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *Id.* (internal citation omitted).

#### II. Petition to Determine Heirship

The Petitioners acknowledge that because Michael and Tammy were married at the time of Michael's death and because Q.L. was born within 300 days of Michael's death, Q.L. is presumptively Michael's heir. *See* Ind.Code § 31–14–7–1(1)(A). They contend, however, that the trial court erred in determining Q.L. to be Michael's heir without allowing them the opportunity to rebut that presumption, by DNA testing or otherwise. Tammy responds that upon

---

1. Tammy Long appears to be the other co-personal representative.

2. This appears to be an error. We can find nothing in the record which indicates Shelly is a personal representative of Michael's estate. The transcript of the hearing indicates Roger and Tammy are co-personal represen-

tatives and Shelly is an "interested party." Appellant's Appendix at 7.

3. We direct the Petitioners' attention to Appellate Rule 51(D), which requires "[a]ll Appendices to be bound separately from the brief."

Michael's death, the presumption became irrefutable, and because the parties stipulated that she and Michael were married and Q.L. was born within 300 days of Michael's death, the trial court properly declined to order a DNA test or consider the Petitioners' other evidence.

## A. *Estate of Lamey v. Lamey*

Both parties relied on *Estate of Lamey v. Lamey*, 689 N.E.2d 1265 (Ind.Ct.App. 1997), *trans. denied*, for their respective positions. The trial court also relied on *Lamey* in issuing its order. The parents in *Lamey* were married in 1978 and V.L. was born in 1985. The parents divorced in 1995, and father died intestate in 1996. Mother, on behalf of V.L., opened an estate, and father's brother (the "uncle") filed a petition to determine heirship and moved for an order for blood tests relating to V.L. The trial court granted the motion, and the case came to this court on interlocutory appeal.

We first noted that Indiana Code section 29–1–6–6(a) allows "any interested person" to file a petition to determine heirship, and as the uncle was a potential heir of father's if V.L. were deemed not to be his heir, he was an "interested person" and had standing to petition the court as he did. *Id.* at 1267. We next noted that the probate code indicates an intention for all heirship relationships to become absolute at death, except as provided for after-born children. *Id.* at 1267–68 (citing Ind.Code §§ 29–1–1–3, 29–1–2–6). Because V.L. was not an after-born child, her status as the sole heir to her father's estate was established upon his death. In an attempt to circumvent this result, the uncle contended that the probate code allowed him to request paternity blood testing as long as he did so within five months of the father's death. He relied on Indiana Code section 29–1–2–7, which provides:

For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if:

(1) the paternity of the child has been established by law in a cause of action that is filed:
 (A) during the father's lifetime, or
 (B) within five (5) months after the father's death; or
(2) the putative father marries the mother of the child and acknowledges the child to be his own.

We noted several problems with the uncle's position. First, the above-quoted statute provides only a limited opportunity for paternity of a child born out of wedlock to be established by the child or the putative father, not disestablished by a third party. *Id.* at 1268. Second, father was presumed to be V.L.'s biological father because he and mother were married when V.L. was born. *See* Ind.Code § 31–14–7–1. Although direct, clear and convincing evidence can rebut a presumptive father's paternity, the uncle had no standing under the paternity statutes to try to establish or disestablish V.L.'s paternity because he was not also asserting paternity in himself. 689 N.E.2d at 1268–69. Third, because father and mother had explicitly acknowledged V.L. as a child of the marriage in their divorce decree, father would be unable to challenge his paternity at this stage if he were still alive, and the uncle was attempting to do what the father could not. *Id.* at 1269.

Ultimately, we held that the uncle was not entitled to challenge V.L.'s paternity in an heirship proceeding and the trial court erred in ordering blood testing. *Id.* at 1270. Judge Kirsch filed a written opinion concurring in result in which he noted his reluctance to join in the majority's conclu-

sion that the paternity of a child born during an intact marriage cannot be challenged in heirship proceedings under any circumstances, but noting that under the circumstances of this case, he had no such reluctance in concluding that the trial court had erred. *Id.*

### B. *Lamey*'s Applicability to This Case

Tammy asserts that the facts of this case are very similar to those of *Lamey* and although she acknowledges that there are a few facts that distinguish this case from *Lamey,* she contends that the applicability of the holdings of *Lamey* are not affected by those differences. We disagree.

■ The child in *Lamey* was born both during her parents' marriage and during her father's lifetime, whereas Q.L. was born after Michael's death. Thus, the *Lamey* court was not confronted with the question of the paternity of an after-born child, and this distinction is critical. In fact, we see this case as presenting circumstances to which Judge Kirsch referred in his concurring in result opinion in *Lamey.* Tammy summarizes the applicable law and the *Lamey* holdings as they relate to this case as: "[i]f the after-born heir is born within Three Hundred (300) days of their father's death, they are presumed a child of the decedent/father and entitled to inherit from their father. The *presumption may be rebutted* by direct, clear and convincing evidence. However, the *presumption of paternity and heirship is irrefutable once the father dies.*" Appellee's Brief at 2 (emphasis added). Tammy apparently fails to recognize the inherent contradiction in her position, which illustrates the very reason why *Lamey* is inapplicable to a case such as this: because the rebuttable presumption of paternity of an after-born child can arise only after it is known that the child is born within 300 days of the putative father's death, the presumption cannot also previously have become irrefutable upon the father's death.

### C. The Applicable Law

■ Tammy's assertion that the *Lamey* court's holding that all heirship relationships become absolute at a decedent's death is contrary to Indiana Code section 29–1–2–6, which provides:

Descendants of the intestate, begotten before his death but born thereafter, shall inherit as if they had been born in the lifetime of the intestate and had survived him. With this exception, the descent and distribution of intestate estates shall be determined by the relationships existing at the time of the death of the intestate.

The statute clearly provides an exception to the "time of death" rule for determining heirship relationships for after-born children, of which Q.L. is one. To determine whether Q.L. is a descendant of Michael's for purposes of inheriting from his estate, we turn to the paternity statutes, which provide:

A man is presumed to be a child's biological father if:

(1) the:

(A) man and the child's biological mother are or have been married to each other; and

(B) child is born during the marriage or not later than three hundred (300) days after the marriage is terminated by death....

Ind.Code § 31–14–7–1(1): The presumption may be rebutted by direct, clear, and convincing evidence that the man: (1) is impotent; (2) was absent so as to have no access to the mother; (3) was absent during the entire time the child must have been conceived; (4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse; (5)

was sterile during the time the child must have been conceived; or (6) is excluded as the child's father based upon blood grouping test results. *Cooper v. Cooper,* 608 N.E.2d 1386, 1387 (Ind.Ct.App.1993). This list is not exclusive; "it is possible that other evidence can constitute direct, clear, and convincing evidence capable of rebutting the marriage presumption." *Minton v. Weaver,* 697 N.E.2d 1259, 1260 (Ind.Ct.App.1998), *trans. denied.*

Nonetheless, Tammy contends that because the Petitioners are not seeking to establish paternity in themselves, they are precluded from seeking DNA testing or otherwise introducing evidence which would rebut Michael's presumptive paternity of Q.L. The paternity statute limits the persons who can bring a paternity action to the child's mother, a man alleging he is the child's father, the child, and in certain circumstances, the county division of family and children or the prosecuting attorney. Ind.Code § 31–14–4–1. In *K.S. v. R.S.,* 669 N.E.2d 399 (Ind.1996), our supreme court held that a third party is permitted to try to establish his own paternity of a child born into an intact marriage where the husband is statutorily presumed to be the child's father. In *Lamey,* we narrowly construed the *K.S.* holding to be applicable only when a third party was seeking to establish paternity over a child born into an intact marriage and not when a third party was attempting to disestablish paternity. *Lamey* noted that there was no practical difference between an action to determine heirship and a paternity action in that case and therefore the uncle could not try to accomplish through the heirship determination what he could not do in a paternity action. *See also Johnson Controls, Inc. v. Forrester,* 704

N.E.2d 1082, 1085 (Ind.Ct.App.1999), *trans. denied* ("We see no practical difference [between a paternity action and a discovery request seeking blood or genetic testing of a child] as the end result ... is the same. The goal ... is to disestablish paternity.").

Although we understand and agree with the public policy considerations behind the decisions in *Lamey* and *Johnson Controls,* those cases are not controlling in this case of an after-born child. In *Lamey,* the court noted that for ten years after V.L. was born, father had not disputed his paternity of her, and thereafter explicitly agreed in a legal document that she was a child born of the marriage. 689 N.E.2d at 1269. In *Johnson Controls,* the court noted that the decedent had not challenged paternity during his lifetime. 704 N.E.2d at 1085. In this case, however, Michael never had the opportunity to rebut his presumptive paternity during his lifetime because he died before Q.L. was born. Roger, as Michael's personal representative,[4] stands in Michael's shoes and can bring an action if Michael could have done so. *Bender v. Peay,* 433 N.E.2d 788, 794 (Ind.Ct.App.1982). For the statute allowing a petition to determine heirship to have any meaning in this circumstance, Roger has to be able to challenge Q.L.'s paternity in Michael's stead. Moreover, we note that unlike the uncle in *Lamey,* Roger has no personal stake in the outcome of the challenge; whether Q.L. is or is not a legitimate heir of Michael's will not affect Roger at all, as Michael has both a wife and other children who are unquestionably his heirs. In his role as personal representative, Roger just needs to know

4. Because neither party has provided the actual petition to determine heirship and for DNA testing, we cannot be sure of Shelly's relation to these proceedings. Although Shelly is an "interested person" as the mother of Michael's other heirs, if she is not also Michael's personal representative, she has no standing to pursue this action.

how much of Michael's estate to distribute to each of them.

The trial court did not allow the Petitioners to introduce any evidence to rebut the statutory presumption of paternity in Michael, relying instead solely on the stipulations of the parties that Tammy and Michael were married when Q.L. was conceived and that he was born within 300 days of Michael's death. We hold that the trial court misinterpreted the law in so doing. The trial court should allow the opportunity to rebut Michael's presumptive paternity of Q.L.

### *Conclusion*

The trial court misinterpreted the law in denying the Petitioners the opportunity to rebut Michael's presumptive paternity of Q.L., an after-born child. We therefore reverse the trial court's order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, J., and RATLIFF, Sr.J., concur.